Curia,

It was conceded by the counsel for the defendants in error) that the power of the corporation to pass the. by-law in question, must rest upon the statute of 1813, (2 R. L. 445, § 267,) which, for this purpose, supersedes the original charter of the city. The statute proyided that the defendants in error should have full power and authority to pass such by-laws as they, from time to time, should deem necessary and proper, for filling up and regulating grounds, yards and cellars, for filling up lots adjoining the rivers, for compelling bulk heads to be made, for filling up slips, for cleansing privies and sinks, “ and for regulating, or if they- find it necessary, preventing the interment of the dead within the said city.” By § 274, (2 R. L. 447,) the corporation are authorized to. impose penalties for disobedience of their bylaws, to $250. By § 311, (id. 460,) an action for penalties not before particularly appropriated, among which is the penalty in question, is given to the corporation. And the last section, (id. 460,) declares the statute to be public; and that it shall be liberally expounded and construed, to advance its ends.
The by-law in question was passed in 1823 ; and, (without adjudging or reciting that it was necessary, or that the *604 common council found it so,) enacts that no person shall deposit any dead body in any grave, vault or *tomb, within a certain part of the city, under the penalty of $250. The defendants respectively violated this law, and these suits were for its penalties for which the corporation had judg ment in the court below.
The estoppel set up by Coates in relation to North Trinity church yard, cannot avail him. It depends on’the question, whether the defendants in error are liable on their deed, in covenant. If so liable, they might possibly be estopped,on the ground of preventing circuity of action. To allow them to oust Coates, or those under whom he claims, or do what is equivalent to an ouster by their by-law, they being liable to respond in damages for their act, 'to the value of the injury, both parties being considered as individuals throughout, would be an idle thing. But if here be a covenant for quiet enjoyment, it is repealed. We held in The Brick Presbyterian Church v. The City of New York, (5 Cow. 538,) in relation to this very by-law, that it repealed alL covenants entered into by the corporation incompatible with the by-law: that it was equivalent, in this respect, to an act of the legislature, rendering the enjoyment which was the object of the covenant,unlawful.[1]
*604-1 Nor can the length of time during which property has been used for a particular purpose, make any difference.[l]
All these demurrers, therefore, turn on two questions: 1. Is the by-law constitutional ? 2. Is it available as declared on ?
It was conceded, on the argument, that the corporation have, in general, power so to order the use of private property in the city, as to prevent its proving pernicious to the citizens generally. A contrary doctrine would strike at the root of all police regulations. (Vanderbilt v. Adams, treasurer of die ospital of the city of N. Y, 7 Cowen, 348.) But a distinction was attempted between the interests in question in these causes, and property owned absolutely by an individual, which, when one use is forbidden, can be turned to account in another way. In this case, it was said the property is confined in the grant to the purposes of interment; and if this particular use be '^prohibited by the law, it works a total destruction of the right, and fails in the character of a mere regulation. Such is undoubtedly the consequence, so long as the by-law continues in force. But we think the reply of the counsel for the corporation conclusive. The absolute ownership must reside somewhere; and it should not be in the power of the owner so to cut up and sub-divide the uses of his property, as to evade the salutary application of police powers. A lot is granted as a place of deposit for gunpowder, or ot|ier purpose, innocent, in itself, at the time; it is devoted to that purpose, till, in the progress of population, it becomes dangerous to the *605 property, the safety, or the lives of hundreds; it cannot be, J that the mere form of the grant, because the parties choose to make it particular, instead of general and absolute, should prevent the use to which it is limited being regarded and treated as a nuisance, when it becomes so in fact. In this way the legislative powers, essential to the comfort and preservation of populous communities, might be frittered away into perfect insignificance. To allow rights thus to be parcelled out, and secured beyond control, would fix a principle by which our cities and villages might be broken up. Uuisances might, and undoubtedly would be multiplied to an intolerable extent. ¡N"or can it make any difference that the right is purchased previous to the passage of the by-law, or before it becomes necessary. These laws are usually enacted with a view to evils already existing. Till the state of things is such as to render the act complained of a nuisance upon actual experiment, no law is passed. Every right, from an absolute ownership in property, down to a mere easement, is purchased and holden subject to the restriction, that it shall be so exercised as not to injure others. Though, at the time, it be remote and inoffensive, the purchaser is bound to know, at his peril, that it may become otherwise by the residence of many people in its vicinity; and that it must yield to by-laws, or other regular remedies, for the suppression of nuisances.
*We are of opinion that this by-law is not void, either as being unconstitutional, or as conflicting with what we acknowledge as a fundamental principle of civilized society, that private property shall not be taken even for public use, without just compensation. ¡No property has, in this instance, been entered upon or taken. ¡None are benefitted by the destruction, or rather the suspension of the rights in question, in any other way than citizens always are, when one of their number is forbidden to continue a nuisance. For the same reason, there is nothing impairing the obligation of contracts, within the sense of the constitution of the United States.
But the words of the statute giving the power to pass the by-law, are conditional: if the corporation find it ne *606 cessary. It is neither averred in the declaration that they did find it necessary; nor is any adjudication of necessity recited in the by-law, nor does the declaration aver that in truth it was necessary. For all, or some of these omissions, it is contended' that the by-law, as pleaded, must be adjudged void.
To be a corporation is a franchise ; and all our aggregate corporations enjoy the prerogatives of government to a prescribed extent. Among these is the power to pass by-laws upon certain subjects. They cannot transcend the powers conferred on them by statute. This is their constitution. ¡Neither can the state or general governments transcend the powers conferred by their constitutions. Every act beyond the constitution is void; and may be declared so by our courts of justice, whether it emenate from a general or local legislature. An unwarrantable interference with private property is equally unconstitutional and void, whether by the state legislature or a corporation. By neither can it be touched without necessity; and then, if taken, it must' be upon .just compensation. This necessity is not absolute. It is nearly synonymous with expediency, or what is necessary for the public good. The word necessary, when applied "to a law, or taking private property, is constantly understood and acted upon in this sense; or as contra-distinguished from Unnecessary or inexpedient. The statute, then, by the words of the power in question, “if they find it necessary,” says no more than Avhat is implied by every charter of ineórporation, as directory to its members: “ You shall not pass by-laws which are unnecessary.” But be this as it may; some exigency should, in the nature of things, always exist, and in legal presumption does exist, to warrant the passage of a positive law. Yet, we believe, an adjudication or recital of such exigency in the law itself, was never deemed requisite to its validity, whether it was one of absolute necessity or mere expediency. A recital is sometimes deemed proper and useful in the construction of a law; but not-essential to its constitutional existence. It is perhaps too narrow a "view of the subject, to liken this law to the execution of *607 private powers, as was done by the counsel for the plaintiff in error. But even there, a recital or adjudication by the attorney or trustee in the deed by which the power is executed, has often been holden unnecessary, provided the power is in fact followed. It is of the nature of legislative bodies, to judge of the exigency upon which their laws are founded; and when they speak, their judgment is implied in the law itself. It is sufficient, therefore, to set it forth in pleading. This is equivalent to an averment that the exigency has arisen, been adjudicated and acted upon. All to be shown beyond this, is matter by which the court may see that the law operates upon the subject of the power. The implied adjudication is then taken as conclusive. If not so, the exigency itself would be the subject of traverse and trial by jury. To say that it must be averred in pleading, would be to require that the propriety or expediency of every law should be tried as matter in pais. Such a consequence was never contended for in relation to the acts of the lowest judicial magistrate in community.
We think a late decision of the supreme court of the United States, virtually overrules all the formal grounds taken against this law as pleaded. A statute of the United States authorized the president, whenever the country should be invaded, or in imminent danger of invasion, *to call forth the militia. A simple requisition of the president, averred to be in pursuance of that law, was set forth in an avowry, which neither averred the exigency of invasion or danger to have arisen. The requisition recited nothing of it, nor did the avowry aver an adjudication. On demurrer, the requisition, as pleaded, was holden full and sufficient in form. It was also holden that the president was constituted by the act, the exclusive judge of the exigency 5 that the requisition was not only conclusive evidence that he had passed as a judge upon the case; but that a plea of such requisition implied, and was equivalent to an express averment of adjudication. {Martin v. Mott, 12 Wheat. 19.) If such strong judicial intendment prevails in favor of a single officer executing a law, a fortiori *608 should it be exercised in favor of the law making power itself.
This declaration conforms in every respect to the rule laid down by Kyd, in his treatise on the law of corporations. (2 Kyd on Corp. 167.) “In an action of debt for the penalty of a by-law, the time when it was made, the parties by whom it was made, their authority to make it, the by-law itself, and the breach of it by the defendant, must be set forth; that the court may judge'both whether the by-law be good, and whether the defendant be a proper ojaject of the action. (Vid. Hut. 5; Hob. 211; 1 Str. 539; Brownl. & Gouldsb. 177.)’
Judgment affirmed.
Sutherland, J., not having heard the argument, gave no opinion.

 When a municipal corporation acts in a legislative capacity, it is irresponsible ; and the courts cannot interfere with its police regulations, ordained ibr observance by its citizens. But courts can enforce the obligation which -ests upon owners of land, whether corporations or individuals, as to use their property that the proprietors of lands adjacent shall be left secure and uninjured in the enjoyment thereof; therefore neither may maintain a nuisance on their own land. Brower v. The Mayor, &c. of New York, 3 Barb. 253.
Where the board of health of the city of Albany adjudged certain premises to be a nuisance, and an ordinance of the corporation was thereupon passed directing its abatement, and an action of trespass was subsequently brought against the corporation for the act of an agent in carrying the ordinance into effect; it was held, that the plaintiff in such action was not at liberty to show that the nuisance did not in fact exist at the time of the adjudication; and also that it was not competent to him to show any irregularity or noncompliance on the part of the board of health, with the requirements of the statutes in such’cases. Van Wormer v. The Mayor of Albany, 15 Wen. 262.
A party carrying on a lawful business in such manner as to be a nuisance to his neighbors, must answer in damages for the discomfort and annoyance; and he who erects a nuisance on his own land, is liable for the original *604-1 wrong ; and fbr its continuance, after lie have demised the land ; and also where the original erection was made by him on the land of another, on which he has no right to enter in order to abate it; or, if he let property to be used for a purpose which he had reason to believe may prove a nuisance; but no damages can be recovered beyond the amount laid in the declaration. Fish v. Dodge, 4 Denio, 311. N. Y. Dig. vol. 3, p. 640, tit. Nuisance.

 The continuance of a nuisance, created by the overflowing of lands by means of a mill-dam for twenty years and upward, although it confers a right to the use of the land flowed, is no defence to a proceeding on the part of the public to abate it, or to an action by an individual for special peculiar injury sustained by him in consequence of it. Mills v. Hall, 9 Wen. 315. N. Y. Dig. vol. 3, p. 642.