WILLIAM CRONIN, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendant in Error.

By the charter of the city of Albany of 1870 (chap. 77, Laws of 1870) the common council were authorized to enact ordinances "to regulate the erection, use and continuance of slaughter-houses." *Held*, that the common council had power to pass an ordinance prohibiting the slaughtering of animals within certain specified portions of the city; and that under the amendment to the charter of 1871 (title 15, § 1, chap. 536,

Laws of 1871), making a violation of a city ordinance a misdemeanor, an indictment lay for the violation of such an ordinance.

Such an ordinance is not void as being in restraint of trade.

Also, *held*, that it was not necessary, either in the ordinance or in an indictment founded upon it, to allege the reasons for its enactment, or the exigency out of which it grew.

(Argued September 28, 1880; decided October 12, 1880.)

Error to the General Term of the Supreme Court in the third judicial department to review order affirming order of the Court of Sessions, in and for the county of Albany, which overruled a demurrer to an indictment. (Reported below, 20 Hun, 137.)

The nature of the indictment and the facts appear sufficiently in the opinion.

*N. P. Hinman* for plaintiff in error. In passing the ordinance the common council exceeded its powers, and it is inoperative and void. (*Mayor, etc.*, v. *Thorn*, 7 Paige, 261–263; *Met. Bd. of Health* v. *Schmades*, 10 Abb. [N. S.] 205; *Mayor, etc.*, v. *Rood*, Lalor's Sup. 146; Charter of Albany, 58, §§ 12, 13; Laws and Ordinances, 50, 55–57; Laws 1834, chap. 92, § 26, p. 98.) The ordinance was unreasonable, in restraint of trade, against public policy and void. (Potter's Corporations, § 378; *Dunham* v. *Trustees of Rochester*, 5 Cow. 462.)

*A. J. Colvin* for defendant in error. The common council had power to pass the ordinance. (*People ex rel. Cox* v. *Special Sessions*, 7 Hun, 215; 1 Laws 1870, chap. 77, p. 159; id. 165, § 1, title 3; id. 168, § 12, title 3; Laws of 1842, 342, 344; Const. of N. Y., art. 1, § 18; Dongan Charter of July 22, 1686; Laws and ordinances of Albany, 10, § 13; *City of Rochester* v. *Collins*, 12 Barb. 559; *Cooper* v. *Schultz*, 32 How. Pr. 124–127.) The legislature had power to confer upon the common council power to pass this ordinance. (7 Hun, 215; 32 How. Pr. 124; *Met. Board of Health* v. *Huster*, 37 N. Y. 662; *Polinsky* v. *People*, 73 id. 65; *Varicks* v. *Smith*, 5 Paige, 160; Wilcock on Mun. Corp. 141; Potter's Dwarris on Statutes, 48.)

FINCH, J.    The plaintiff in error was indicted in the Court of Sessions of the county of Albany for slaughtering cattle in violation of an ordinance of the common council of that city, which forbids such act within certain prescribed limits, specifically named and described, and directs in the interest of health and cleanliness the manner of conducting such business in the localities from which it is not excluded.    Penalties are imposed by the ordinance for its violation, which may be recovered in a civil action, or by prosecution as for a criminal offense.

The legislature in 1871 made such violation of a city ordinance a misdemeanor, punishable by fine or imprisonment, or both, in the discretion of the court.    (Laws 1871, chap. 536, title 15, § 1.)    The accused demurred to the indictment, and raises here, in support of his demurrer, the single point that in passing the ordinance in question the common council exceeded its powers, and the ordinance so passed is inoperative and void.    The power of the legislature to confer authority for such municipal legislation is not assailed, but the claim that it has actually done so is strenuously denied.

The argument on behalf of the city is that the power to pass such ordinance was incidental to it as a municipal corporation, and resulted from its creation as such, without dependence upon particular words;    that it was embraced in the powers granted by the Dongan charter of July 22, 1686, and which were reserved to the city by the act of 1842;    and was specially conferred by the amended charter of 1870.    (Laws of 1870, title 3, § 12, subd. 14.)

The last-named act authorizes the common council of Albany to enact ordinances with penalties not exceeding $100 in the matters and for the purposes thereinafter named;    and among these purposes is one contained in subdivision 14, the language of which is as follows, viz.: " to regulate the erection, use and continuance of slaughter-houses."

The counsel for the defendant contends that the power thus conferred upon the common council does not justify the ordinance for the violation of which the prisoner was indicted, and

his argument is that the clause referred to is a clear recognition of the right to erect, use and continue slaughter-houses within the city and everywhere and anywhere within its limits, and that, therefore, the authority to regulate them cannot be construed to permit a total prohibition in particular areas or localities.

We do not think the reasoning is sound. The statute recognizes the fact that slaughter-houses exist in the city rather than the right to erect them, and recognizing the fact gives to the common council the power to regulate them. The use of the word "regulate" in the statute is not confined merely to the manner in which the business of slaughtering animals is carried on. To regulate implies a power of restriction and restraint, and is applied in the charter not merely to the "use" of slaughter-houses, which would relate to the manner of conducting the business, but also to their "erection" on the one hand and their "continuance" on the other; so that their "erection" in the first instance, and then the mode and manner of their "use" after they are built, and lastly their "continuance," are placed under the regulating power of the municipal authority. It would be a very narrow and technical construction to say that a power to regulate the erection of a slaughter-house is exhausted in prescribing the form or material of its erection and has no reference to its locality. And the construction wholly fails when applied to the "continuance" of such a structure and the business carried on within it. How is it possible to regulate its continuance except by limiting and restricting that continuance, which again can only be done by prohibiting its continued existence. It is the plain purpose of the statute to give to the common council the right to fix and determine the limits and localities within which new slaughter-houses may be erected and the areas from which they shall be excluded; to direct and control the mode and manner of using those so erected and those already existing, as they may deem the health and cleanliness of the city requires; and to prohibit their continuance whenever and wherever they become sources of danger to the health or comfort of the community.

The counsel argues that this construction may result in a total prohibition; that if the municipal control can exclude slaughter-houses from the area already named in the ordinance, it can steadily increase and enlarge such area until the business is driven wholly from the city. That does not necessarily follow. It will be soon enough to decide that question when it arises. It is not yet here. We are not to presume that the common council will abuse the authority intrusted to them, or fail to recognize the absolute need of the business to the necessities of the community, while at the same time they feel their responsibility for the health and comfort of the people. It is enough to say for the present that their action is clearly within the authority of the charter.

Our attention is called to other paragraphs under section 12 as tending to throw light upon the meaning of the word "regulate." The suggestion is that, where authority to prohibit is intended, some stronger word than "regulate" is used, indicating the severer restriction. The language of legislative enactments is not always rigidly precise and accurate, and an argument drawn from the use of specific words is often dangerous; yet, in the present case, the terms of the subdivisions referred to favor rather than oppose the meaning we attach to the word in question. As a general rule, with, perhaps, occasional exceptions, through all the paragraphs of the section where some act or thing is not to be permitted at all, anywhere or in any locality, a more restrictive word than "regulate" is used; as, "to prevent and remove" obstructions in the streets; where the act or thing is such as may be permitted under proper restraint, at convenient times, in suitable localities, the word "regulate" is used; and where the act is one which it may be wise either to permit under appropriate restraints, or to wholly prohibit, the two words are used "to regulate or prevent;" and where a more general and undefined power is intended, involving various details, the phrase adopted is "in relation to." We see nothing, therefore, in the language of the other subdivisions to change our conclusion that an ordinance which excludes from a specific place or locality the busi-

ness of slaughtering cattle is a regulation of that business, and therefore within the power conferred upon the common council by the provision under discussion. Indeed the precise point was long ago adjudged. In *The Village of Buffalo* v. *Webster* (10 Wend. 100), where a similar ordinance was assailed as in restraint of trade, the court held that an ordinance providing " that meat shall not be sold in a particular place is good, not being a restraint of the right to sell meat but a *regulation* of that right."

. The same authority disposes of the objection that the ordinance in question is void as being in restraint of trade, following, in that respect, still older cases (*Bush* v. *Seabury*, 8 Johns. 418; *Pierce* v. *Bartrum*, Cowp. 269), and justifying the principle of the later authorities, in which the exercise of such powers by boards of health has been steadily sustained. (*Metropolitan Board of Health* v. *Heister*, 37 N. Y. 662; *Polinsky* v. *The People*, 73 id. 65.)

If we correctly understand the counsel for the appellant, he also claims that the ordinance is void, because it punishes the prohibited acts "without pretense, or any form of proof that they were injurious to the well-being of the town, or that prudence required its passage." The answer is that neither in the ordinance itself, nor in the indictment founded upon it, is it necessary to allege or explain the reasons for its enactment or the exigency out of which it grew. It is of the nature of legislative bodies to judge for themselves, and the fact, and the exercise of that judgment, is to be implied from the law itself. (*Stuyvesant* v. *Mayor of New York*, 7 Cow. 606; *Martin* v. *Mott*, 12 Wheat. 19; *Rector, etc., of Trinity* v. *Higgins*, 4 Robertson, 1.)

We do not see, therefore, that any error was committed in the court below.

The order should be affirmed and the case remanded for the proper sentence to the Court of Sessions of the county of Albany.

All concur.

Ordered accordingly.