MAYOR, ETC., OF CITY OF NEW YORK *v.* DRY-DOCK, E. B. & B. R. Co.

*(Common Pleas of New York City and County, General Term.*   June 22, 1891.)

1. HORSE RAILROAD COMPANIES—COMPLIANCE WITH ORDINANCE—EVIDENCE.

   The operation of an ordinance of the common council of the city of New York, approved June 3, 1890, requiring defendant to run its cars on Avenue B and Avenue D of its line between midnight and 6 o'clock A. M., was suspended until July 8, 1890. In an action to recover a penalty for a violation of such ordinance in not running its cars as required on Avenue D on the night of July 11, 1890, the defense was that the company could not provide itself with the necessary horses between June 3d and July 8th to run its cars on Avenue D.   It appeared that defendant had provided horses for the Avenue B route, and fully complied with the ordinance with respect thereto in the required time.   *Held,* that it conclusively appeared therefrom that there was ample time, if due diligence had been used, for defendant to have in like manner complied with the ordinance in respect to Avenue D.

2. SAME—REASONABLENESS OF ORDINANCE.

   Under Laws N. Y. 1860, c. 512, § 2, (defendant's charter,) which provides that "said railroad * * * shall be run as often as the convenience of passengers may require, and shall be subject to such reasonable rules and regulations in respect thereto as the common council * * * may prescribe," the courts may inquire into the reasonableness of an ordinance of the common council of the city of New York, requiring defendant to run its cars on certain portions of its lines between the hours of midnight and 6 A. M.

3. VALIDITY OF MUNICIPAL ORDINANCE—BURDEN OF PROOF.

When the unreasonableness of a municipal ordinance is not apparent on its face, the burden of proof will be upon the party attacking the ordinance to establish its unreasonableness.

4. SAME—COMPETENCY OF EVIDENCE.

It is not competent to prove the unreasonableness of a municipal ordinance requiring a street-railroad company to run its cars between midnight and 6 A. M. by the opinion of its superintendent, based upon the fact that in his 20 years' connection with the road he knew of no demands, nor complaints, nor public necessity justifying the adoption of the ordinance in question.

5. SAME—EFFECT OF PASSAGE OF ORDINANCE.

Where a street-railroad company attacks the reasonableness of an ordinance requiring it to run its cars between midnight and 6 A. M. it is not competent for it to show that at certain periods of the prescribed time there were no passengers, and that the cars ran empty, since the adoption of the ordinance itself must be taken as proving the existence of the exigency requiring it.

Appeal from fifth district court.

Action by the mayor, aldermen, and commonalty of the city of New York against the Dry-Dock, East Broadway & Battery Railroad Company. There was a judgment for plaintiffs, and defendant appeals.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

*John M. Scribner*, for appellant. *Louis Steckler*, for respondents.

DALY, C. J. The action was brought upon an ordinance of the common council of the city of New York requiring the city surface railroad companies to run cars both ways every 20 minutes between midnight and 6 o'clock A. M., each day, and imposing a penalty of $100 for each neglect and refusal to comply with the ordinance. The complaint alleged a failure on the part of the defendant to run its cars, as required by the ordinance, on East Broadway, from Scannell to Catharine street, on July 11, 1890. The defense was a general denial, and an averment that the ordinance in question was unreasonable, was never lawfully passed, that the common council had no authority to adopt it, and that the defendant has complied with its charter in relation to the operation of its railroad and the running of cars thereon. The violation of the ordinance by this company was proved, it being shown that on a part of its route on East Broadway cars were not run on the night in question, as required by the ordinance. The company operates three branches of road, called, respectively, the "Avenue B Line," the "Avenue D Line," and the "Cortlandt-Street Line." The cars of the Avenue B and Avenue D lines run upon the same track through a part of East Broadway, but the cars of the Avenue D line run only upon the track between Clinton and Columbia streets; and it was upon this part of the road that the defendant neglected to run the cars on the Avenue D line, as well as running the Cortlandt-Street line. On the Avenue B line only was there a compliance with the ordinance on the date in question. It was shown by defendant that the company subsequently, and within 20 days after the ordinance went into effect, commenced and continued to run the Avenue D line as required by the ordinance, and the defendant claims that the reason why the cars of that line were not run before was that it was practically impossible to do so. The ordinance in question was passed May 20, 1890, and approved by the mayor June 3, 1890, but that day its operation was suspended until July 8th, by resolution of the common council. The company claimed that it could not procure the necessary horses and break them in for the work within the period from June 3d to July 8th, and that the ordinance was unreasonable, because compliance with it was impossible at the time of the alleged violation. It appears, however, that within that period the defendant was able to make the necessary preparations to run its cars on the Avenue B line, as required by the ordinance; and that it only commenced to buy the extra horses that it needed for the other routes on July, 1st. As compliance with the ordinance on such other routes was actually commenced 28 days thereafter, it conclusively appears that there was ample

time, if diligence had been used, to complete the necessary preparation between June 3d, when the ordinance was approved, and July 8th, when it became operative. The only other ground upon which it is claimed that the ordinance is unreasonable is that the running of the cars upon its routes between the hours in question is not required for public convenience, and the reversal of the judgment for the penalty is asked for error in the exclusion of evidence offered by the defendant to show that the cars were running empty because there were no passengers between those hours.   There is no contention that, if the public convenience required the running of these cars, there would be anything unreasonable in the ordinance.   The charter of the defendant company provides as follows: "Sec. 2. Said railroad shall be constructed on the most approved plan for the construction of city railroads, and shall be run as often as the convenience of passengers may require, and shall be subject to such reasonable rules and regulations in respect thereto as the common council of the city of New York may from time to time by ordinance prescribe." Laws 1860, c. 512. The defendant is entirely correct in claiming that the reasonableness of the ordinance is open to inquiry in the courts.   The legislature has imposed a limitation upon the authority of the common council, to-wit, that the rules and regulations prescribed in its ordinance shall be "reasonable;" and the power exists in the law to restrain any exercise of that authority beyond the limit which the law has fixed. The courts undoubtedly have the power to determine whether the law has been transgressed. *Railroad Co.* v. *Minnesota*, 134 U. S. 418, 10 Sup. Ct. Rep. 462; *Stone* v. *Trust Co.*, 116 U. S. 331, 6 Sup. Ct. Rep. 334, 388, 1191. But if the reasonableness of such an ordinance is challenged, the burden is upon the party making such claim to establish it.   In considering whether a regulation in favor of the public convenience and comfort is reasonable, the presumption is in favor of its reasonableness.   The judicial power to declare it void can only be exerted when from the inherent character of the ordinance, or from evidence taken showing its operation, it is demonstrated to be unreasonable. *State* v. *Inhabitants of City of Trenton*, 20 Atl. Rep. 1076.   In this case the contention is that the ordinance is unreasonable, not because it imposes additional burdens by way of expenses upon the company, but because such expense is unnecessary,— the convenience of the public not requiring it.   But what proof was offered by the company to show that the ordinance was not required for the public convenience?   The assistant superintendent of the road was asked whether, after his 20 years' experience in connection with the road, there is public necessity, or has ever been any public demand, for the running of cars on the road between midnight and 5 o'clock in the morning more frequently than has been done. Also whether, prior to the 8th day of July, 1890, there was any complaint ever made to the company on the part of any members of the public that the cars were run less frequently on the routes of its various railroads than the public convenience required.   It is not competent to attempt to prove the unreasonableness of a public ordinance by the opinion or conclusion of a witness; nor to prove the unreasonableness of this ordinance by showing that the company knew of no demands nor complaints which justified its adoption. As the regulation of the matter was left by law to the common council, and not to the company, it was to be presumed that complaints and demands would be addressed to the former, and not to the latter; and the offer of the evidence in question ignored the fact that it was the facts before the common council at and before the passage of the ordinance which were proper to be considered in determining the reasonableness of their ordinance.   The main struggle at the trial was to get in proof that since the cars commenced to run on July 28th, at certain periods between midnight and 6 o'clock A. M. there were no passengers, and that the cars ran empty.   But this was an attempt to show a state of things after the passage of the ordinance, and the experience

of the company with the ordinance between July 28th and the time of the trial, October 3d.   There was no attempt to show that the common council did not have at the time of the passage of the ordinance facts before it which justified the adoption of the regulation in question.   The ordinance itself proves the existence of an exigency which required it.   "Neither in the ordinance itself, nor in the indictment founded upon it, is it necessary to allege or explain the reasons for its enactment, or the exigency out of which it grew. It is of the nature of legislative bodies to judge for themselves; and the fact, and the exercise of that judgment, is to be implied from the law itself." *Cronin* v. *People*, 82 N. Y. 323.   The facts which were patent to the common council at the time of the passage of this ordinance, and of which we may take judicial notice, are:   That the route traveled by the defendant's cars is through a densely populated portion of the city, where a vast number of families reside, whose pleasure or convenience or necessities might at some time, or from time to time, require the means of transportation by these cars between midnight and 6 o'clock A. M.; that the cars connected distant parts of the city with the newspaper district, where a multitude of persons is employed after midnight; and that the cars connect with the bridge to Brooklyn, and the Twenty-Third street ferry across the East river, and with a number of other horse-car routes; so that, even if there were no immediate public clamor at the moment for the running of cars after midnight, it was entirely within the discretion of the common council to make provision for possible future public needs in that direction.   The ordinance was not shown to be unreasonable, and should have been complied with, and the judgment for the penalty is affirmed.   All concur.