Titus, Ch. J.
This action was brought in the municipal court to recover penalties for violating §§ 1, 3, chapter 5, of the city ordinances, in crossing certain streets at a greater rate of speed than six miles an hour, and in not bringing its trains to a full stop before crossing Griffin street and Hydraulic street. A judgment was obtained against the defendant in the court below for $100, being the amount of two penalties as fixed by the ordinance. As to Griffin street, it is not claimed by the plaintiff’s counsel, in his brief, that the evidence established that it was a public highway; and he claims that at the close of the case in the court below it was conceded by the plaintiff that it was not entitled to recover for a failure to stop at that street. A judgment was given for but two penalties, under the evidence as it stands, without including Griffin street It is probable that the court below did not give judgment on a penalty for violating the ordinance in reference to Griffin street
The principal question raised by the defendant’s counsel is as to the validity of the ordinances. He claims that they are unreasonable, and discriminate unlawfully against the defendant, and injuriously affect its business, and that the defendant cannot be convicted of a violation of the ordinances, because the acts complained of were committed without its knowledge or consent, and against its express orders.
By subdivision 7, § 17, of the revised charter (chapter 105, Laws 1891), it is provided that the common council shall from time to time enact ordinances “to prohibit or regulate the use of locomotive engines and of steam, and to regulate other motive power and speed, on any portion of any railroad within the city; to require any railroad company to keep a flagman or gates at *152 each railroad crossing of a public street.” This is the' only provision of the .charter which authorizes the common council to enact the'ordinances in question. In pursuance of this provision of the statute the common council enacted ordinances which, so far as they are material here, are as follows:
Chapter 5, § 1: “It shall not be lawful for any steam railroad to propel any engine or cars across any public street, at grade, in the city of Buffalo, at a greater rate of speed than six miles an hour, under a penalty of fifty dollars for each offense. The provisions of this section shall not apply to any passenger trains running on the Belt Line of the New York Central & Hudson River Railroad.”
The last subdivision of § 3, which is the only part of the ordinance having any bearing upon the question, is as follows:
“All passenger trains crossing the following streets in the city of Buffalo, namely, Babcock street, Griffin street, Hydraulic street, Yan Rensselaer street, and Heacock street, shall come to a full stop at every crossing of each of said streets, under a penalty of fifty dollars for each and every offense.”
As Griffin street was not shown to be a public street, no penalty would be incurred under this ordinance for not coming to a full stop before crossing. It seems, however, that there0 was evidence showing that Hydraulic street is a public highway, and has been such for many years, which fact I do not think was successfully controverted by the defendant It has been laid out, opened and traveled for many years, and portions of it near the tracks of the defendant railroad have been paved. The spaces between the tracks have been planked. The names of the street are upon the corners of the street, and there is every indication that it is a public street, and it must now be so regarded. There are a large number of railroads entering the city at different points, and from almost every direction. Some are on elevated tracks, but most of them are laid on the surface, and cross the streets at grade. It is forty or more years since the New York Central Railroad Company and the Brie Railroad Company built their railroads in this city, and for some distance from Michigan street, which is practically the starting. point of both, the trades are laid near to and parallel with each other. What is called the “ Belt Line ” by the witnesses, in giving their testimony, is a train running in both directions around the more thickly settled portions of the city at stated intervals, leaving and arriving at the principal depot of the New York Central Railroad Company. It is not a separate corporation, and is designated the “Belt Line " for public convenience. This train has been run about ten years, and, going east from the principal depot, it runs on the main tracks of the Central Railroad Company as far as Bast Buffalo, at or near William street, where it bears to the north and west until it intersects the main tracks of the Buffalo & Niagara Falls branch of the Central Railroad, and continues on these tracks up and along the Niagara river, across the Terrace, and to the Central Railroad Company’s principal depot. In 1883 the legislature, by chapter 462, authorized the New York Central Railroad, on this Belt Line, to charge a *153 minimum fare of five cents for one continuous ride for any distance traveled in the city. It will thus be seen that the Belt Line is not a railroad corporation, owning tracks of its own, but merely a name of a train operated by, and running on the tracks of, the Mew York Central Railroad Company. This fact may bear somewhat upon the purpose and scope of the ordinance, which excepts from its provisions relating to the rate of speed at which railroad companies may run their trains “ trains running on the Belt Line of the Mew York Central & Hudson River Railroad.” It may also bear-somewhat on the question raised by the defendant’s counsel, that the ordinance unjustly discriminates against the defendant. It appears that the trains of several other roads run upon the main tracks of the Central Railroad Company within the city, some a greater and some a less distance. For instance, the trains of the Western Mew York & Pennsylvania Railroad run but a, few blocks, and then branch off to the right, and then on, south and west.
The defendant’s counsel, in his elaborate brief, bases his argument of the invalidity of the ordinance relating to the speed of trains- (§ 1) upon the assumption that the Belt Line is a distinct railroad, having tracks of its own, with the trains of numerous other roads passing over them, and reaches a conclusion that the provision of the ordinance excepting the Belt Line trains from its operation applies to all trains passing over the main tracks of the Central Railroad, on which, for some distance, the Belt Line trains run. This cannot be a correct interpretation of the ordinance. As has been stated, the facts are the reverse of this claim, and the exception to the ordinance can apply only to the Belt Line trains. This is so, as a brief review of railroad history will show. It is within the knowledge of every adult person in this city that the Belt Line road was established to bring the people living in remote parts of the city more speedily to the business centers. Rapid transit was wanted, and if the trains of the Belt Line were limited to six miles an hour that object could not be attained. As the concession was made by the legislature in allowing a charge of five cents for any distance for each passenger, so the common council, in furtherance of this object, excepted from the provisions of the ordinance “ all passenger trains running on the Belt Line.” The defendant’s counsel tried the cause in the .court below, and now argues it, upon the theory that all trains passing over the main tracks are within the exception to the ordinance. I think he is mistaken in his assumption that all trains running on this track are not subject to the six miles an hour regulation. It does not seem to me that the exception to the ordinance affects any trains excepting the Belt Line trains. I think the language of the provision plainly bears out such a construction, and, when the facts attending the running of the Belt Line trains are considered, it does not seem to me to leave the question open to doubt. If this, is the correct interpretation, then all trains entering the city at grade are subject to the ordinance regulating the rate of speed., whether they run on the defendant’s tracks, or on the tracks oí *154 the New York Central & Hudson Elver Railroad Company, except the trains in the Belt Line service.
This eliminates from the case many of the questions raised by the counsel for the defendant, and presents, upon this branch of it, the single question, is the ordinance which permits the trains in the Belt Line service to run at an unlimited speed, while it limits the speed of all other trains on all of the roads within the city to six miles an hour, invalid ? It should be borne in mind that no other railroad runs a line around the city in competition with the Belt Line; that its traffic is entirely local, and confined by the ordinance to passenger business. The plaintiff, by its complaint, claims that the defendant violated § 1 of the ordinances above quoted, in running its train at a greater rate of speed than six miles an hour ; second, that it violated § 3, in not bringing a passenger train to a full stop at Griffin street; and, third, that it violated § 3, in not bringing its passenger train to a full stop at Hydraulic street. Section 3 of the ordinances is general in its terms, and applies to all railroads. The defendant claims that the common council had no power to enact the ordinances; that they are unreasonable, and unjustly discriminate again,st its railroad. From an examination of the authorities, it may be stated, generally, that the exercise of delegated power by municipal bodies is limited"to such acts as are clearly within the words of the charter, or derived therefrom by necessary implication. The ordinance must be legal, and not repugnant to the constitution or laws of the state. It must not unjustly discriminate against any person. It must be reasonable, in view of the subjects sought to be regulated, and the evil to be remedied. Dillon Mun. Corp., § 320 et seq.] Mayor v. Thorne, 7 Paige, 261; People v. Draper, 15 N. Y., 545; Cronin v. People, 82 id., 323; Mayor v. Dry-Dock, E. B. & B. R. Co., 39 St. Rep., 105. The provisions of the charter which authorize the common council to pass ordinances regulating the speed of. trains ■on railroads certainly confer upon that body the power to pass ordinances restricting the rate of speed. It has fixed a limit of six miles an hour in crossing streets, and I think it acted entirely within the statute. It does not seem to be unreasonable, in view of the situation in this city. Buffalo has a population of ■300,000, and its numerous railroads entering the city, and crossing many of the most important streets at grade, call for the exercise of great care in their operation, to avoid accident to the people whose business requires them to cross these streets many times .a day.
For many years, under similar authority in the charter of 1870, ordinances have been in force, limiting the rate of speed of railroad trains to six miles an hour, and in that portion of the -city where the greatest danger was to be apprehended; and I am not aware that their validity or reasonableness has ever been questioned in any court. Nor does it seem to me to discriminate in favor of the Central Railroad, or against the defendant. The Belt Line trains run around the city. The trains of no other road do. No other road is engaged in carrying passengers exclusively within the city. Other roads have stations, and make stops to *155 take on and let off passengers, but no road competes with the Central road in running trains within the city limits for local passenger business. Other roads are subjected to the same restriction, and incur a like penalty if they violate the ordinance and cross streets at a greater rate of speed than six miles an hour, and tiie Central Railroad incurs or subjects itself to the same penalty whenever it violates the ordinance in that regard; and the ordinance cannot be declared invalid for the reason that it discriminates against the defendant.
So far as these ordinances are concerned, this practically disposes of the case. The ordinance, § 3, requiring trains to come to a full stop at Babcock street, Griffin street, Hydraulic street, Van Rensselaer street, and Heacock street, does not seem to have been violated by the defendant. There is no evidence in the case, that I can discover, that the defendant’s trains did not stop at Babcock and Heacock streets. The witness, Deining, in his testimony, states that the train stopped at Smith street and Van Rensselaer street, but did not stop between these two streets. Hydraulic and Griffin streets are between these two streets, and, as there is a failure of proof to show that Griffin street is a public highway, no penalty was incurred by the defendant in not stopping at that crossing. Hydraulic street being a public highway, under the ordinance trains would be required to stop before crossing that street, which, as appears from this witness was not done. If the ordinance is reasonable and valid, a penalty was incurred ; but at page 235 of the minutes of the court below, it appears that it was stipulated that the testimony in regard to trains stopping at Hydraulic street might be stricken out, thus leaving no testimony in the case of a failure to stop before crossing any of the streets mentioned in the ordinance. It is therefore unnecessary to pass upon the validity or reasonableness of this section of the ordinance, because there is no evidence that the ordinance was violated by the defendant.
It is claimed that the defendant cannot be convicted of the offenses charged in the complaint because the violation of these ordinances was without the consent of the defendant, and contrary to its express orders. It will not be presumed that the defendant’s employes knowingly, and against the defendant’s express orders, violated the ordinance. There is no direct pi’oof that the persons having charge of this train had notice of the ordinances, or of the defendant’s wish with reference to them. However that may be, the law is well settled that the master is liable for the acts of his servant, even if wrongful, and done in violation of the master’s orders. Peck v. Railroad Co., 70 N. Y., 587; Mott v. Ice Co., 73 id., 543; Quinn v. Power, 87 id., 535; Ochsenbein v. Shapley, 85 id., 214. The case of Davis v. Bemis, 40 N. Y., 453, note, seems to be decisive of the question here raised. That case was for a penalty for a violation of the statute by the agents of the defendant, without the principal’s knowledge or consent; and the court held, in an exhaustive opinion, that the principal was liable. The doctrine of this case does not seem to have been questioned or dis *156 turbed, and it must now be considered as the law in this state. The case before us is a civil action to recover a penalty, in the nature of a tort, and the defendant is liable if a cause of action has been made out.
There are numerous objections and exceptions to the rulings of the court on the trial; most of them relating to Hydraulic and Griffin streets, and are not material. Others were immaterial, and no error was committed by the court in its rulings in that respect. And, besides this, the defendant’s counsel, in his brief, makes no claim that error was committed on the trial, and he has presumably waived all questions of error of the court below during the trial.
But one question remains to be considered. The penalty fixed for violation of the ordinance in not coming to a full stop at Hydraulic and other streets is fifty dollars. The court below gave a judgment for two penalties, one for crossing Chicago street at a greater rate of speed than six miles an hour, contrary to § 1 of the ordinances, which is fifty dollars, and the other for not stopping at Hydraulic street before crossing, evidently having overlooked the fact that the claim as to Hydraulic street had been withdrawn before the case was finally submitted. It is the duty of this court to correct the error, as it can be done without reversing the judgment. Section 3063, Code. The amount of damages should have been for one penalty, for crossing Chicago street contrary to the ordinance, which necessarily reduces the amount of the recovery to fifty dollars. The costs allowed under the charter, § 462, on a recovery of $100 is $15 ; and on a recovery of $50, $8. As the recovery will be but $50, the costs must be reduced to correspond with the recovery as reduced, namely, to $8, and the plaintiff should be ordered to repay to the defendant $7, the amount of costs overpaid; and the judgment as modified is affirmed, without costs to either party.
Hatch and YChite, JJ., concur.