DEPARTMENT OF HEALTH OF CITY OF NEW YORK v. EBLING BREWING CO.

(Municipal Court of City of New York, Borough of Manhattan, Seventh District. June 25, 1902.)

1. CITIES—ORDINANCES—POLICE POWER—SMOKE NUISANCE.

Sanitary Code, § 134, imposing a penalty on the proprietor of a manufactory, etc., for not so constructing the furnaces as to consume the smoke, is not unconstitutional, as an arbitrary limitation of the right to use of land and premises, but is a proper exercise of the police power.

Action by the department of health of the city of New York against the Ebling Brewing Company to recover a penalty for a violation of Sanitary Code, § 134. Judgment for plaintiff.

F. W. Stelle, Asst. Corp. Counsel, for plaintiff.

Nathan, Leventritt & Perham (Otto O. Sommerich, of counsel), for defendant.

JOSEPH, J.  This is an action brought by the department of health of the city of New York to recover a penalty from the Ebling Brewing Company for a violation of section 134 of the Sanitary Code. That section reads as follows:

"Sec. 134. That the owners, lessees, tenants, and managers of every blacksmith or other shop, forge, coal yard, foundry, manufactory, and premises where any business is done, or in or upon which an engine or boilers are used, shall cause all ashes, cinders, rubbish, dirt and refuse to be removed to some proper place, so that the same shall not accumulate at any of the above-mentioned premises, or in the appurtenances thereof, nor the same become filthy or offensive. Nor shall any owner, lessee, tenant, manager, engineer, fireman or any other person cause or allow any smoke, cinders, dust, gas, steam or offensive odor to escape or be discharged from any such building, place or premises, and every furnace employed in the working of engines by steam, or in any mill, factory, printing house, dye factory, iron foundry, glass house, distillery, brew house, sugar refinery, bake house, gas works, or in any other buildings used for the purposes of trade or manufacture, shall be so constructed as to consume or burn the smoke arising therefrom."

The violation alleged is in permitting to be discharged from the premises large volumes of black smoke, and in failing to have its furnaces so constructed as to consume or burn the same.

The defendant admits the violation, and does not seek to excuse or justify the same, but challenges the validity of the ordinance; claiming that it exceeds the legislative power, and attempts to arbitrarily limit the owner's use of his land and premises, and for that reason that it is unconstitutional. It is absolutely well settled that the legislature may delegate the power of passing ordinances for the preservation of the health, or the promotion of the comfort, good order, and general

welfare of its citizens to a municipality, and so long as the ordinances are within the delegated powers, and are convenient and appropriate to accomplish these ends, they have the full force of law, and should be upheld. In re Jacobs, 98 N. Y. 98, 50 Am. Rep. 636. The power to regulate and abate nuisances, and preserve the health and comfort of the citizen, is one of the principal functions of government, and is subject to regulation within the police power. "This power is and must be, from its very nature, incapable of any very exact definition or · limitation. Upon it depends the security of social order, the life and health of the citizen, the comfort of an existence in a thickly populated community, the enjoyment of private and social life, and the beneficial use of property" (by Justice Harlan, in the Slaughterhouse Cases, 83 U. S. 36, 21 L. Ed. 394). A citizen has not absolute and unlimited rights over his property, but holds his rights subject to control and regulation for the benefit of the masses. As said by Shaw, C. J., in Com. v. Alger, 7 Cush. 53:

"Rights of property, like all other ordinary rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law as the legislature, under the governing and controlling power vested in them by the constitution, may think necessary and expedient. This is very different from the right of eminent domain,—the right of the government to take and appropriate private property to public use whenever the public exigencies require it,—which can be done only on condition of providing reasonable compensation therefor. The power we allude to is rather the police power,—the power vested in the legislature by the constitution to make, ordain, and establish all manner of wholesome and reasonable laws, statutes and ordinances, either with penalties or without, not repugnant to the constitution, as they shall judge to be for the good and welfare of the commonwealth, and of the subjects of the same. * * * Nor does prohibition of such noxious use of property—a prohibition imposed because such use may be injurious to the public, although it may diminish the profits of the owner—make it an appropriation to the public use, so as to enable the owner to compensation. * * * If a landlord could let his building for a smallpox hospital or a slaughterhouse, he may obtain an increased rent, but he is restrained, not because the public have occasion to make the like use, or to make any use of the property, or to take any benefit or profit to themselves from it, but because it would be a noxious use, contrary to the maxim, 'Sic utere tuo ut alienum non lædas.' It is not an appropriation of the property to a public use, but a restraint of an injurious private use by the owner, and is, therefore, not within the principle of property taken under the right of eminent domain."

Whatever is injurious to human life, or detrimental to health, and whatever renders the air or human food or drink unwholesome, is a nuisance. Village of Jamaica v. Long Island R. Co., 37 How. Prac. 379. It is not necessary that in framing its rules and ordinances the legislative body declare the act legislated upon to be a nuisance, or injurious to health, in order to make it effective. It is sufficient if it is known or can be shown to be such, and that the rule has a reasonable or legitimate tendency to ameliorate or obviate the same. Cronin v. People, 82 N. Y. 323, 37 Am. Rep. 564; City of Cincinnati v. Miller, 29 Ohio Wkly. Law Bul. 364. In fact, the presumption is in favor of the reasonableness, and if it is claimed to be unreasonable, it is for the defendant to show the facts which should exempt it from compliance with the general regulation. Mayor, etc., of City of New

York v. Dry Dock, E. B. & B. R. Co., 133 N. Y. 104, 30 N. E. 563, 28 Am. St. Rep. 609.

It is a well-recognized fact that in large communities, which are closely built up and inhabited by the working class to a large extent, a quantity of smoke discharged into the air from factories is most objectionable and offensive; rendering the air disagreeable and injurious to breathe, injuring clothes, textiles, and numerous other articles, and otherwise causing inconvenience and annoyance to those subjected thereto. Ordinances aimed at this evil have frequently been upheld, and there can be no question but what it is the subject of municipal control and regulation. Marshall Field & Co. v. City of Chicago, 44 Ill. App. 410; City of New Orleans v. Lambert, 14 La. Ann. 247; City of St. Paul v. Gilfillan, 36 Minn. 298, 31 N. W. 49; People v. Lewis, 86 Mich. 273, 49 N. W. 140.

I therefore conclude that the board had jurisdiction over the subject-matter, and could lawfully make such rules and regulations for its control or suppression as they deemed proper; and the defendant, not having justified or excused its acts, but attacked the power of the law-making body to make the regulations, is at fault, and must pay the penalty sued for.