CITY OF ALBANY, Respondent, v. AARON NEWHOF and Another, Doing Business under the Firm Name and Style of L. NEWHOF & SON, Appellants.

Third Department, November 26, 1930.

*Woollard & Cogan* [*Louis J. Rezzemini* of counsel], for the appellants.

*George A. Reilly, Corporation Counsel* [*Anthony DeStefano, Assistant Corporation Counsel*, of counsel], for the respondents.

VAN KIRK, P. J. The plaintiff, city of Albany, has a judgment restraining defendants from slaughtering cattle on their premises in that city. It alleges that defendants are unlawfully so doing without the consent of the city council. The answer sets up denials which question the validity of the ordinance and that section 42 of the Second Class Cities Law authorizes the action. The pleadings do not raise the question whether, if consent were asked, it would be granted.

Article 12, section 3, of the Constitution grants to every city power to enact " local laws, not inconsistent with the Constitution and laws of the State, relating to   *   *   *   the protection of their [its inhabitants] property, safety and health." The city ordinance provides (section 21): " It shall not be lawful for any person, without permission from the Common Council, to slaughter cattle, sheep or swine in any building now erected or hereafter to be erected, or otherwise, within the territory hereinafter described." This ordinance is a legislative act of the common council, authorized both by Legislature and Constitution (Second Class Cities Law, § 30; Const. art. 12, § 3); being such it is as obligatory as if enacted by the Legislature itself. (*City of Buffalo* v. *N. Y., L. E. & W. R. R. Co.*, 152 N. Y. 276, 280; *Village of Carthage* v. *Frederick*, 122 id. 268; *McCabe* v. *City of New York*, 213 id. 468, 484.) It is not inconsistent with the Constitution or any State law and it relates to the protection of the property, safety and health of the inhabitants of the city.

Slaughtering cattle is a proper subject of municipal regulation. It is a power which rests in the State and may be delegated to a municipality. (*Slaughter-House Cases*, 83 U. S. 36, 62, 63; 2 Dillon Mun. Corp. [5th ed.] p. 1048.) Such an ordinance is valid, though the city council acting in its legislative capacity placed the

dispensing power in itself. (*Matter of Larkin Co.* v. *Schwab*, 242 N. Y. 330, 334; *Fischer* v. *St. Louis*, 194 U. S. 361.) Nor is there discrimination in that consent to slaughter cattle within a restricted district depends upon the act of the common council as an administrative body. As said in the *Larkin Case* (*supra*), speaking of the ordinance then being considered: " It makes a general rule, but maintains the right to create exceptions. It does not deny to any person the equal protection of the laws nor deprive him of liberty or property without due process of law. * * * It assumes that the council will exercise its discretion honestly, without unreasonable discrimination against particular persons or classes, and solely as the result of decision that special circumstances dictate exception to general rule. The purpose of the statute is to authorize discrimination on reasonable grounds, for the purpose of granting consent. An applicant is deprived of his rights only when unreasonable discrimination is shown to dictate the refusal. The courts may not interfere with discretion as to when exception shall be made, nor formulate standards to be used in the exercise of that discretion; they may interfere only when it is clearly shown that refusal is based solely upon grounds which as matter of law may not control the discretion of the council." The further use for the prohibited purpose of an establishment at present in operation may be forbidden under such an ordinance. (*Cronin* v. *People*, 82 N. Y. 318; *Fischer* v. *St. Louis*, 194 U. S. 361; 3 McQuillin Mun. Corp. [2d ed.] § 963, p. 158.)

The general rule under this ordinance is that slaughtering of cattle within a restricted district and without the consent of the common council is prohibited. The court has found that the defendants' plant is within the restricted district; that slaughtering of cattle is being carried on on defendants' premises without permission of the common council, and that no consent has been given. These findings are well supported in the record.

The fact remains that, if defendants had asked permission, the common council could have given its consent to the use of defendants' premises for slaughtering cattle.

It seems to us that the decision of the trial court is right. The ordinance is a valid exercise of the power of the common council of the city as a legislative body. The interdiction is absolute, except in a case in which the common council sitting as an administrative body has given its consent. No consent has been given or applied for and we cannot say on this record that, if properly applied for, the common council would have refused to grant it. There is no proof in this case that the provisions of the ordinance in itself are

unreasonable or oppressive. Had there been a denial of consent, there is evidence in the case which would strongly controvert the determination. Since there has been no such determination we cannot say that the common council, acting as an administrative body, has acted unreasonably or arbitrarily. The comments of the court in *Lang's Creamery, Inc.,* v. *City of Niagara Falls* (251 N. Y. 343), beginning at the bottom of page 346, seem to us quite apt in this case. We suggest this upon the ground that the question of reasonableness relates only to the act of the common council in granting or refusing consent and not to the ordinance itself. There is no provision in the ordinance naming conditions under which a permit therefor must be granted or must be refused. The ordinance does not declare the slaughtering of cattle to be a nuisance, but leaves the determination as to the consent dependent upon the facts of each case. If consent be refused, then whether or not the determination was a reasonable and proper exercise of discretion could be judicially reviewed.

Section 42 of the Second Class Cities Law gives authority for the maintaining of this action.

The judgment should be affirmed. The plaintiff should be restrained from enforcing its judgment until defendants have had a reasonable opportunity to apply for consent to continue their business.

HINMAN and HILL, JJ., concur; DAVIS, J., dissents, with an opinion, in which HASBROUCK, J., concurs.

DAVIS, J. (dissenting). Nowhere in the record or in the briefs of counsel is there any claim or suggestion that this ordinance adopted in 1911 has acquired any new validation or virtue by the adoption, on November 6, 1923, of section 3, article 12 of the State Constitution relative to the power of cities to enact local laws. Nor is there any reference to the City Home Rule Law enacted in 1924, which carried out the provisions of the amendment. The amendment was not self-executing, and neither in the amendment nor the law was there anything giving retroactive effect on ordinances already passed. Section 33 of the City Home Rule Law says that no repeal of any existing provision of law is intended.

The ordinance in question was enacted in 1911 under the power conferred upon the municipality by section 30 of the Second Class Cities Law. That statute is still in force. It is the basis of all ordinances in second class cities enacted prior to 1924. The plaintiff pleads violation of the ordinance enacted pursuant to the statutory power theretofore given, and has tried its action on that basis. The corporation counsel has made no claim at any time

that any subsequent constitutional provision or legislative act supports or bolsters up the ordinance. That theory has originated in this court without advocacy or suggestion of counsel, and without being submitted to, or considered at the Trial Term. I think it is generally a safe rule to allow counsel familiar with cases from their inception to try and argue them on their own theories, and accept responsibility for results.

There was no specific power given in the statute to pass an ordinance restricting or prohibiting slaughter houses or declaring them to be a nuisance. Instead, the common council was given general power to legislate for the government of the city and " for the preservation of good order, peace and health, for the safety and welfare of its inhabitants and the protection and security of their property." (Second Class Cities Law, § 30.) If their authority takes no new vitality and force from subsequent constitutional or statutory provisions, the ordinance must be tested by its reasonableness as related to the question of depriving persons of their property without due process of law.

The only charge in the complaint is that the business is unlawfully conducted in violation of the ordinance. That ordinance provides in brief that it should not be lawful for any person, without permission of the common council, to slaughter cattle, sheep or swine in any building within the territory therein described, which included practically the entire city. No rules and regulations were prescribed in the ordinance or elsewhere upon compliance with which the defendants and others might obtain permission. The theory of the action is not to enjoin a public nuisance, but to restrain a violation of the ordinance. That was made clear by the statement of the corporation counsel on the trial and the failure to offer any evidence indicating that the public health or welfare had been impaired.

The property affected is a meat packing plant doing a gross annual business of $1,000,000. It has been in operation at its present location for fifty years and represents an investment of $100,000. Slaughtering of cattle is a necessary part of the business. The defendants made proof, and it has been found, that their plant is not located in a residential neighborhood, but that in the immediate vicinity there are railroad tracks, oil tanks and business plants of different kinds; that the slaughtering of animals in this plant is carried on under the inspection of Federal officers in a humane, clean and sanitary manner, and that it in no way affects the public health. There is ample proof undisputed that no noxious or unwholesome odors arise from this plant. A physician connected with the city bureau of health, making an investigation at the

direction of his superior officer and called as a witness by plaintiff, testified that there were no odors " detrimental to health or happiness of the people living in that vicinity." So far as it appears no complaint has been made to the authorities concerning the operation of this plant.

Defendants say that the ordinance is unreasonable and oppressive; and to enforce the injunction would be to deprive them of their property without due process of law. The rules governing acts of this character are reasonably clear. In this country it is fundamental that the life, liberty and property of the individual should be secure from the tyranny of government. The rights or property of individuals must at times yield to the greater necessity of the common good. The police power inherent in government may be invoked and exercised in behalf of the common weal if a real evil exists, or may reasonably be anticipated. But an evil must exist and there must be a reasonable relation between the evil and the proposed remedy. (*Safee* v. *City of Buffalo*, 204 App. Div. 561; *Matter of Stubbe* v. *Adamson*, 220 N. Y. 459.)

Where there is legislation of the character under consideration here it is necessary to inquire concerning the authority behind it. The Legislature may act, and if its acts are attacked the inquiry is directed as to whether the act is violative of constitutional inhibitions. On some subjects common knowledge or a reasonable belief in the existence of an evil will justify the necessity of the legislation. (*People* v. *Schweinler Press*, 214 N. Y. 395; *Muller* v. *Oregon*, 208 U. S. 412.) In other instances the legislation may be justified by investigations and inquiries conducted before the act was passed. (*People ex rel. Durham R. Corp.* v. *LaFetra*, 230 N. Y. 429, 438, 440.) But if the legislation goes beyond reasonable lengths and interferes with rights secured by Constitutions, it is invalid. (*People ex rel. Duryea* v. *Wilber*, 198 N. Y. 1; *Lawton* v. *Steele*, 152 U. S. 133, 137.)

The same general rules apply to ordinances of municipal corporations. (*People ex rel. Wineburgh Adv. Co.* v. *Murphy*, 195 N. Y. 126.) In a case like this a municipality must rely upon a delegation of power to it from the Legislature for its authority to legislate on any subject. (*Matter of McAneny* v. *Board of Estimate, etc.*, 232 N. Y. 377, 390.) If the power to legislate is only general or implied, then the court will make an examination as to whether the ordinance is unreasonable or oppressive. (*People ex rel. Knoblauch* v. *Warden, etc.*, 216 N. Y. 154, 162.)

Applying these familiar rules to the facts in this case, there is no evidence that the city had a grievance against the defendants on the ground that they were maintaining a nuisance or anything

which interfered with the public health and welfare. A slaughter house is not a nuisance *per se*. (*Schuster* v. *Metropolitan Board of Health*, 49 Barb. 450; *Ballentine* v. *Webb*, 84 Mich. 38; 20 R. C. L., Nuisances, § 64.) It depends upon how it is conducted. (*Cooper* v. *Schultz*, 32 How. Pr. 107, 135.) Particularly is this true under modern conditions. The common council could not assume without investigation that all places where cattle were slaughtered were nuisances. No doubt if expressly authorized by the Legislature a city may adopt an ordinance entirely prohibiting such a business. (*Cronin* v. *People*, 82 N. Y. 318; 2 Dillon Mun. Corp. [5th ed.] § 691.) Here, the council was given no specific power to prohibit the operation of slaughter houses unless the City Home Rule Law became retroactive. Under the proof, the unreasonable and oppressive character of the ordinance was established, and it should be declared invalid. (*Village of Carthage* v. *Frederick*, 122 N. Y. 268, 271; *People ex rel. Knoblauch* v. *Warden, etc., supra; Yick Wo* v. *Hopkins*, 118 U. S. 356; *Dobbins* v. *Los Angeles*, 195 id. 223.) A lawful business does not become unlawful by the arbitrary fiat of a municipal legislative body acting under general delegated powers.

On whatever theory we approach the question of enforcement of the ordinance, its justification must be on the theory that the business of defendants is harmful to the public health and safety — in other words, that the slaughtering of animals within the limits of a city, no matter where and under what conditions, constitutes a nuisance.

If the act was invalid there was no necessity of applying for consent. Until the city had indicated the conditions required to be met in applying for a license, in the form of regulations, the granting thereof would be a mere matter of favor. Surely the defendants cannot have their business destroyed by an injunction simply because they did not seek a favor.

For these reasons I vote for reversal and a dismissal of the complaint.

HASBROUCK, J., concurs.

Judgment affirmed, with costs.*

---

\* Decision amended January 21, 1931. See 231 App. Div. ——.