Macomber, J., concurred.

---

In the Matter of the Estate of JAMES P. SHEDD, Deceased.

*Executors and administrators — filing inventory — what is a "family" within the statute defining "assets" set apart for the widow.*

At the time of the death of one Shedd he had not lived with his wife for ten years, nor had he supported her for the last eight of said years. During said ten years he did not keep house, and at the time of his death he had no minor child nor any servants. A daughter for whom, up to the time of her majority, he had bought and paid for clothing, but not for board, became of age three years before her father's death, she having, during the separation of her parents, lived with her mother.

*Held*, that the deceased had a "family" within the meaning of chapter 157, Laws of 1842, as amended by chapter 406, Laws of 1889, providing that, upon the death of "a man having a family," and leaving a widow or minor child, certain articles and moneys shall not be deemed assets, but shall be set apart for his widow.

APPEAL by Ezra H. Shedd, individually and as executor of James P. Shedd, deceased, from an order or decree, entered in the office of the surrogate of Chautauqua county on the 8th day of September, 1890, requiring him as such executor to file an inventory, or that an attachment issue, and that he pay to Martha W. Shedd certain costs and disbursements.

*Frank W. Stevens*, for the appellant.

*Obed Edson*, for Martha W. Shedd, respondent.

MACOMBER, J. :

The respondent Martha W. Shedd is the widow of James P. Shedd, deceased,   The appellant Ezra H. Shedd is the executor of the last will of James P. Shedd, and the sole legatee thereunder. There are no debts against the estate.   The facts presented to the surrogate, and as they appear from the printed record, are not disputed ; and it is the inferences to be drawn therefrom which alone are in controversy.   For ten years before the death of James P. Shedd he and his wife ceased living together, and lived separate and apart, though during a portion of that period in the same neighborhood.   For eight years next preceding his death the husband had not contributed to the support of his wife, nor did they have any intercourse with each other ; but for about a year and a half he did, to some extent, contribute to her means of support.   During this period of ten years the decedent did not keep house ; had no minor child or children at the time of his death, nor any servants. A daughter born to these persons attained her majority about three years before the death of her father.   Up to the time of her majority he bought and paid for her clothing, but not for her board.   She lived and boarded with her mother most of the time from the separation of her parents until the death of her father.

Lest the surrogate might order the executor to file an inventory, irrespective of the question of the widow's interest in the property, it was stipulated by the parties that in case it should be held that Mrs. Shedd had no such interest in the estate as she claimed, the proceedings should be dismissed and no order for an inventory be made.   The surrogate directed an inventory to be filed under the following provision of the Revised Statutes :   " When a man having

a family shall die leaving a widow or minor child or children, the following articles shall not be deemed assets, but shall be included and stated in the inventory without being appraised." (3 R. S. [6th ed.], 90, § 9.) By chapter 157 of the Laws of 1842 the exemption made by the Revised Statutes was extended so as to include household furniture and working tools from distress for rent and sale under execution. By chapter 406 of the Laws of 1889, section 2 of the act of 1842 was amended so as to make the exemption in specified cases $1,000 where it had been previously limited to the amount of $150, in addition to certain articles of personal property. The amendment made by the Laws of 1889 was repealed by chapter 173 of the Laws of 1890.

The testator died October 10, 1889, so that under the law as it stood at that time the widow, if her contention be supported, would have a substantial sum set over to her, for her immediate support, under the statute. The cause of the separation of the husband and wife, and of their continued living apart for ten years, together with the cause of the separation of the daughter from her father, is not given Indeed, the very minimum of information is afforded in the record upon which an intelligent judgment can be pronounced. We cannot indulge in any presumptions in favor of one party or the other, because the facts upon which such presumptions might safely be rested do not appear. The learned surrogate was of the opinion that, considering the relation of the parties of husband and wife, every "reasonable presumption may be made in her favor." We can hardly subscribe to this proposition. For aught that appears, she separated from her husband without cause, and the household was broken up without fault on the part of the husband. In the absence of some evidence to justify the sundering of the relation of husband and wife, the true presumption would seem to be, that the husband still has, as the head of the household, the right to determine the domicile of the parties.

The question involved turns upon the meaning of the word "family." The Century Dictionary defines that word as follows :

" 1. The collective body of persons who form one household under one head and one domestic government, including parents, children and servants ; and, as sometimes used, even lodgers or boarders. In

law, husband and wife living together, and having no children, are sometimes deemed within the benefit of a statute as to families."

" 2. Parents, with their children, whether they dwell together or not ; in a more general sense, any group of persons closely related by blood, as parents, children, uncles, aunts and cousins; often used in a restricted sense only of a group of parents and children founded upon the principle of monogamy."

There are many other authorities which might be quoted, but it is hardly necessary to refer to them, because they all fall under one or the other head of the definitions as above given. That the word admits of many meanings can scarcely be disputed. There are many other definitions given of the word by various authorities, but the two mentioned above are the only illustrations necessary for the purpose of elucidating this case. A technical intepretation of the word is not to be adhered to where the object and intention of the law-makers clearly enough appear without such resort. As was said in the case of the *People ex rel. Wood* v. *Lacombe* (99 N. Y., 49), the laws should be so construed as to carry out the legislative intent, even though such construction be contrary to the literal meaning of some of the words used therein. But it is not necessary in this instance to go to that extent ; for, under one definition as above given, the decedent had a family within the meaning of the statute. The argument of the learned counsel for the appellant is to the effect that in order to constitute a " family," within the meaning of this act, there must be a collective body of persons who live in one house, under one head or manager. It is claimed by him that unless this condition is satisfied there is no family within the meaning of the act. If this reasoning be sound, then it necessarily follows that if there is a collective body of persons who live in one house, under one head or manager, irrespective of the relationship of the members of the household, there is a family. Suppose, for instance, that at the time of the separation of Mr. and Mrs. Shedd, instead of boarding and lodging in different places, the husband had continued his establishment with a retinue of servants, there clearly would have been a family under the argument presented to us, and under one of the definitions of the word. Had the decedent died under these circumstances he would have died " having a family," and immediately the statute above mentioned would have been applicable to

the case, and the exempted property set apart not for any member of that household or of that family, but for the benefit of his wife. So we see that if this reasoning of the learned counsel is to be followed the statute would be bereft of the beneficient purpose for which it was manifestly enacted. It would be tantamount to legislating that if a man should die leaving one family, certain property must be exempt from appraisal and set apart for the use of his other family. But no such meaning, as it seems to us, can be ascribed to the statute. It is a plain statement of legislative purpose to set apart for the widow or minor children, or both, certain articles of property and certain moneys for their immediate necessities after the death of the husband. If a separation of ten years, without a contribution to the support of the wife by the husband, dissevers the family, within the meaning of this statute, why should not a temporary separation work the same result where the wife is able to and does provide for her own maintenance?

Counsel for the appellant has brought to our attention the case of *Linton* v. *Crosby* (56 Iowa, 386), as being a case pointedly in his favor. Of that fact there is not much doubt. The court there held, under the statute, that where a husband and wife had lived separate and apart for several years preceding his death, and he neither contributed nor was asked to contribute to her support, and during that time he lodged in his office and boarded in the family of others, the husband was not, at the time of his death, "a head of a family," within the meaning and intent of the statute relating to exemptions in favor of widows and minors in that State. This decision, however, we are not able to follow, and feel compelled to reject its application to the construction of our own statute.

It follows that the order appealed from should be affirmed, with costs.

DWIGHT, P. J., concurred.

Order of surrogate of Chautauqua county affirmed, with costs.