In the Matter of the Estate of ALFONSO SIMEONE, Deceased.*

Surrogate's Court, Westchester County, November 10, 1931.

*Herman D. Furnam* [*Henry K. Heyman* of counsel], for the widow.

*Del Bello & Del Bello,* for the executor.

*Arthur Rowland,* special guardian.

* See, also, *Matter of Greenberg* (141 Misc. 874).

SLATER, S. Alfonso Simeone executed a will on the 1st day of April, 1924. He also executed a codicil on the 26th day of September, 1930, in the following words:

" I, Alfonso Simeone, * * * having made my Last Will and Testament bearing date the 1st day of April, 1924, do now make and publish this Codicil thereto which is to be taken as an addition to a part of my said Last Will and Testament. * * *

" And I hereby ratify and confirm my said Will and Testament in every respect save so far as any part of the same is inconsistent with this Codicil."

Neither will nor codicil made provision for the widow.

The decedent died February 6, 1931, leaving Anna B. Martin Simeone, widow of a second marriage, and a son and grandchildren of a former marriage. The said two paper writings were admitted to probate as his last will and testament, in Westchester county, on April 17, 1931. On September 18, 1931, the surviving spouse exercised the personal right of election given by the provisions of section 18 of the Decedent Estate Law, in effect September 1, 1930.

The widow contends that the execution of the codicil after the effective date of the new statute gives rise to the right of election, and, on the other hand, the special guardian and the executor contend that the execution of the codicil had no effect and that the will is one executed before August 31, 1930.

Section 18 of the Decedent Estate Law was enacted by chapter 229 of the Laws of 1929, which became a law April 1, 1929, with the operation of the statute postponed until September 1, 1930. Section 18 of the Decedent Estate Law provides:

" § 18. Election by surviving spouse against or in absence of testamentary provision. 1. Where a testator dies after August thirty-first, nineteen hundred and thirty, and leaves a will thereafter executed and leaves surviving a husband or wife, a personal right of election is given to the surviving spouse to take his or her share of the estate as in intestacy, subject to the limitations, conditions and exceptions contained in this section."

In publishing the codicil, the testator said it was to be taken " as an addition " to his said last will and testament, and he further stated that he ratified and confirmed his said last will and testament, " save so far as any part of the same is inconsistent with this codicil."

In construing the new statute and interpreting the meaning of the Legislature from the language employed, the statute must be read in its entire setting, and the purpose of the Legislature must be given effect. (*People ex rel. Durham R. Corp.* v. *La Fetra*, 230 N. Y. 429, 437.)

The question is whether or not a codicil executed after August 31, 1930, *relating to a will* made before that date would have the effect of bringing the will down to the date of the codicil, so as to come within the provisions of section 18 of the new Decedent Estate Law, and giving the surviving spouse the right to take as in intestacy.

The early New York cases with regard to republication of wills arose by reason of the adoption of the Revised Statutes of 1830.

In *Salmon* v. *Stuyvesant* (16 Wend. 321) the court said (at p. 331): " I can no more consent to the nullification of a legal operative will, on the ground that it brings the affairs of the estate into a supposed unfavorable posture, than I can join in rectifying a bargain which turns out to be unfavorable to the party."

*Root* v. *Stuyvesant* (18 Wend. 257) relates to the same will. The court, speaking of the effect of the codicil, said (at p. 286): " It is said that when this will was made, all its provisions were legal. That is true of the original execution in 1828. But this will was made when it was *republished* by the testator, in 1833, and then the power to lease was void." (Italics are writer's.)

As to the question of whether or not the testator knew the meaning of the Revised Statutes, the court continued (at p. 298): " I must be permitted to ask, with great deference, but certainly with some emphasis, upon what authority are we to assume that this testator did not know the law? Has such a principle of construction been before acted upon? So far from that, the principle has often been denied. Through all the changes of the statute or common law, in all departments of business and duty, it has been the maxim of courts, that every citizen knew and was bound to know the legal rules by which his contracts, his wills, and his conduct were to be governed; and that the law of the land entered into and was to be read with and made a part of them, as if it had been actually recited."

Whether or not the testator intended that the will, as executed before the enactment of the Revised Statutes, was to continue in force, the court says (at p. 302): " In judging of intent, another rule forces itself upon us equally imperative with any which we have before considered; it is, that every man shall be held to intend the legal consequences of his own act. I have already remarked, that we are to read this will just as if the testator had incorporated in it all the provisions of the Revised Statutes any way applicable; and then declared, that so far as those statutes allow, he desired his will might prevail, and that it should be void in those respects only wherein they declared it should be invalid."

In *Van Cortlandt* v. *Kip* (1 Hill, 590; on appeal, *sub nom. Kip* v.

*Van Cortland*, 7 id. 346, 349 [Court of Errors]), the court held: " It is perfectly well settled that a republication of a will, by a codicil annexed to the will, or endorsed thereon, or referring to the will in such a way that there cannot be any doubt as to the identity of the instrument to which the codicil relates, as in this case, makes the will speak from the date of the codicil; so as to carry to the residuary devisee lands acquired by the testator between the date of the will and of the codicil, under the residuary devise contained in the original will."

This case discusses the English cases on republication of the will, *even though no intention* as to republication is expressed.

*Matter of Howland* v. *Union Theological Seminary* ([1851] 5 N. Y. 193, 214) held: " The second codicil became part of, and was a republication of the will, not only by *operation of law*, but according to the express directions of the testator, and the two must be construed together as one instrument. (*Barnes* v. *Crowe*, 1 Ves. Jr. 486; Sumner's ed. and note; *Mooers* v. *White*, 6 Johns. Ch. R. 375; *Westcott* v. *Cady*, 5 Johns. Ch. R. 344, and cases there cited.) " (See *Van Alstyne* v. *Van Alstyne*, [1863] 28 N. Y. 375.)

In *Brown* v. *Clark* ([1879] 77 N. Y. 369, 375) a codicil is defined to be a supplement or an addition to a will or an explanation or alteration of the former dispositions of the testator and is to be taken as part of the will, all making but one testament.

" The general doctrine is well settled that a codicil executed with the formalities required by statute for the execution of wills, *operates as a republication of a will*, so far as it is not changed by the codicil." (Citing cases.) (Italics are writer's.)

The court (at p. 375) said: " In each of these cases lands acquired by the testator after making the will and before the execution of the codicil were held to pass under the will. It was not essential to the application of this rule that the codicil should be annexed to the will or express an intention to republish the will or refer to the devise. It was sufficient if the codicil was executed with the formalities required for the execution of a will of lands." (See *Caulfield* v. *Sullivan*, [1881] 85 N. Y. 153.)

In *Cook* v. *White* ([1899] 43 App. Div. 388 [2d Dept.]; affd., 167 N. Y. 588) CULLEN, J., late chief judge, writing, restates the general doctrine that a codicil operates as a republication of a will, and further says: " ' Constructive republication takes place where a testator, for some other purpose, makes a codicil to his will; in which case the effect of the codicil, if not neutralized by internal evidence of a contrary intention, is to republish the will.' (1 Jarm. Wills, 174.) "

*Matter of Campbell* ([1902] 170 N. Y. 84, 87) held that, when

the codicil is executed with those formalities (referring to the formalities of execution), it is a final testamentary disposition and the will, to which it is shown to be a codicil, if itself an existent and completed instrument according to the statute, is taken up and incorporated, so that the two taken together are deemed to, and necessarily do, express the final testamentary intentions.

In *Herzog* v. *Title Guarantee & Trust Company* ([1903] 177 N. Y. 86, 91) the will and codicil were taken and construed as parts of one and the same instrument and the dispositions of the will were not disturbed further than necessary to give effect to the codicil. (Citing *Hard* v. *Ashley*, 117 N. Y. 606; *Goodwin* v. *Coddington*, 154 id. 283.) (See *Matter of Bradley*, 119 Misc. 2.)

In *Matter of Brann* ([1916] 219 N. Y. 263, 268) it was held that " the effect of a codicil is to republish the will and make it speak again from the new date. (*Matter of Campbell*, 170 N. Y. 84, 87.) "

In *Decker* v. *Hoag* ([1917] 101 Misc. 474, 479) the court said: " It is urged on the part of the heirs * * * that the will cannot be regarded as republished by the codicil as of the date of the latter, so as to pass real property acquired between the dates of the two instruments, because the codicil in its dispositive part, is applicable solely and expressly to the property disposed of by the will, and it is asserted that this doctrine is supported by authority, citing 40 Cyc. 1222, n. 47. The authorities mentioned in the citation which might seem to support such a doctrine are English cases, the doctrine of which does not seem to have been accepted in the courts of New York. [Citing cases.] " (*Matter of Marshall*, 119 Misc. 407; *Matter of Phelps*, 133 id. 450; *Matter of Francis*, 73 id. 148, 155.)

Upon the facts of the instant case, the contention of the widow must prevail, irrespective of any construction that may be gathered from the manner of the enactment of the statute and the purpose which the Legislature had in mind. The new law is general in its operation to all wills executed before or after its effective date, if those executed before August 31, 1930, are brought within its terms by the execution of a codicil. The decedent expressly *republished the will* and it was brought down to the date of the codicil when the codicil was executed. We must presume that the testator intended to give up any benefits which might have accrued from leaving a will antedating the new statute.

Cases will arise under the operation of the new law, where a codicil contains no dispositive parts, even where it may only relate to the appointment of an executor, testamentary trustee or testamentary guardian. Under such facts, the question has been asked whether such a will gives the surviving spouse the new statutory right of election. It has been contended that the right of election

can be given only under the theory of *republication* by codicil if the will was not re-executed. The statement has been made that, if a codicil is properly executed, containing a sufficient reference to a prior will, it republishes said will as of the date of the codicil. It is further claimed that republication is a rule of construction, and as such is subordinate to the intent of the testator. (*Matter of Phelps, supra.*) (See note upon this subject in 31 Columbia Law Review, 128, Jan. 1931.)

An examination of the cases hereinbefore referred to, relating to republication by a codicil, discloses that in every instance there was a statement of republication or reference to the will. There is no express holding otherwise, except in *Cook* v. *White* (*supra*), and that relates to *constructive republication*. When a testator formally executes a codicil, it is an indication of a continuance of the testamentary interest, except as changed. The codicil impliedly brings down the will to the date of the codicil, so that both instruments are to be considered as speaking at the same date, and taking effect at the same time.

Republication of wills is of two kinds — express and implied or constructive. Express republication occurs where the testator repeats those ceremonies which were essential to constitute a valid execution with the avowed intention of republishing the will. Implied or constructive republication takes place where the testator for some other purposes makes a codicil to his will; in which case the effect of the codicil, if not neutralized by internal evidence of a counter intention, is to republish the will. (1 Jarm. Wills, *157.)

In *Matter of Johnson* (105 Misc. 451; affd., 188 App. Div. 954) the codicil did not refer to the will, but only spoke of *transferring a gift* from certain societies to the church itself. The testator must have had his will *in mind*, and intended a continuance of the original testamentary gift as changed by the codicil. It was an implied republication of the will.

If only an executor is named in the codicil, without reference in any wise to a will, there is an implied intention to date the will as of the new date. It cannot be otherwise.

" A married woman made her will and, after the date of the will, she acquired other property and, subsequently, she made a codicil whereby she devised part of such after-acquired property but did not *expressly* confirm her will. It was held by CHITTY, J., that the effect of the codicil was to confirm the will as it originally stood." (*Whitby* v. *Highton*, W. N. 1888, 26; 58 L. T. 842; 36 W. R. 683; 1 Jarm. Wills, *160, note M.)

The word " codicil " is defined as " a supplement, adding to, revoking or explaining something in the body of a will." (Standard Dict.)

1 Bouvier's Law Dictionary, 516, gives the definition of codicil as "some addition to or correction of a last will and testament."

Under the Roman civil law and also by the early English law, as well as the canon law, all of which very nearly coincided in regard to this subject, it was considered that no one could make a valid will or testament unless he named an executor, as that was the essence of the act.

Whatever definition the word "codicil" may have had, section 2 of the Decedent Estate Law has given it one by declaring that the term "will" shall include all codicils as well as wills. This has been in the law since the days of the revisers. In no other section of the Decedent Estate Law is the word "codicil" used.

The word "will" is nowhere defined in the Decedent Estate Law. The requisites of the execution of a will are set forth in section 21. In the various sections of the Decedent Estate Law the word "will" is mentioned, but nowhere is there found any precise definition of the term. Section 18, when made a part of the Decedent Estate Law, must take its definition of a will from section 2, which, by express enactment, applies to the whole chapter. The new statute does not say in express terms, nor by implication, that it is to be operative if the decedent does not leave any earlier will, nor that the right of election operates only against a will executed after August 31, 1930. The language is that, if the decedent dies after August 31, 1930, and leaves a will executed thereafter, the right of election to take the intestate share at once arises.

The new section 18 is effective "where the decedent dies after August 31, 1930, and *leaves a will* thereafter executed." When a decedent's spouse has left a will executed after August 31, 1930, it is clear that the right of election does exist. But where the decedent's spouse has executed a will before August 31, 1930, and executes a codicil making a minor and unsubstantial change in the will, and the codicil is executed after August 31, 1930, does the codicil give the surviving spouse a right of election which would not have existed under the will without the codicil? This is a question that has given rise to discussion.

What was the intent and purpose of the Commission and the Legislature with regard to the subject-matter when it enacted the new Decedent Estate Law? The statute says that it is to apply when the will was executed after August 31, 1930. As a codicil is a will, the statute is complied with where the codicil is executed after August 31, 1930. There can be only one last will and testament at time of probate. The last will and testament may be in separate papers, executed at different times. Where a testator

makes successive wills which are not inconsistent, they are all entitled to probate. (*Matter of Cunnion*, 201 N. Y. 123.)

In *Matter of Campbell* (*supra*, at p. 87) the court said: " When a codicil is executed with those formalities, it is a final testamentary disposition and the will, to which it is shown to be the codicil, if itself an existent and a completed instrument, according to the statute, is taken up and incorporated; so that the two taken together are deemed to, and necessarily do, express the final testamentary intentions." (*Matter of Johnson*, 105 Misc. 451; affd., 188 App. Div. 954; *Van Wert* v. *Benedict*, 1 Bradf. 114, 119.)

When the Legislature created the right of election against the will of a decedent and started the statute running from September 1, 1930, with a limitation that only wills executed after that date should be affected, it used the term " will " in a practical way, and it refers to what is a legal recognized will, that is, the will as it is adjudicated to be in the only court having jurisdiction, namely, the Surrogate's Court. Whenever a codicil of any kind or character is executed after September 1, 1930, we have a technical compliance with the language of the statute because there was a paper which was denominated a will, namely, a codicil executed after August 31, 1930.

Assuming a decedent leaves four wills, all of which are entitled to probate, and each one of them disposes of one-fourth of the estate, and that all, except the last, are executed before August 31, 1930, if the decedent leaves surviving a widow and children, the widow's right of election is against one-third of the estate. Would it be contended that the right of election only existed as to the one-fourth disposed of in the last will, and all that the widow could take was her intestate share in one-fourth? The Legislature did not intend to create a right of election in proportion to the amount disposed of in a particular paper writing. The Legislature said that on certain conditions, namely, the existence of a will dated after August 31, 1930, the spouse's right of election arises. This was not made dependent upon the provisions of the instrument, whether the last paper writing gave little or much, or gave nothing at all. An instrument properly executed under the statute which only names an executor is a will. The intention of the Legislature was to make the new statute operate wherever any additional act of testamentation was performed. The statute said affirmatively that it was to operate wherever a will was executed after August 31, 1930. The Legislature had in mind the general rule that a will statute operates on wills of all persons dying after the effective date of the statute, and it wanted to leave undisturbed those wills which were not at all subject to any act of testamentation after the statute went into effect.

By chapter 519 of the Laws of 1927 the Legislature appointed a

Commission of fifteen members "to investigate and recommend as to the advisability of a revision of the real property law, the personal property law, the decedent estate law and the other statutes of this state as the Commission may deem advisable for the purpose of modernizing and simplifying the law relating to estates and the systems of descent and distribution of property, the advisability of establishing a unified system for the devolution of real and personal property, and to prepare proposed legislation for such purpose."

The Commission made its report to the Legislature in 1928, recommending real changes in the substantive law of the Decedent Estate Law, and in other laws made necessary to effectuate such improvements. Subdivision 8 of the report refers to the protection of the widow, or surviving husband, against disinheritance. The Legislature extended the term of the Commission, and further changes were recommended and enacted into law, becoming chapter 174 of the Laws of 1930.

The notes of the revisers, which they have appended to section 18, although only an expression of their opinion and their intention, and not having the effect of matters before the Legislature, their statement that it was intended to make the new statute operate when a codicil was executed after August 31, 1930, is *helpful.* (*Mitchell* v. *Schroeder*, 94 Misc. 270, 277, Justice LEHMAN; affd., 174 App. Div. 857; *Matter of Samson*, 139 Misc. 490, 494; *Woollcott* v. *Shubert*, 217 N. Y. 212.)

The note of the revisers is as follows: "Inquiries have been received by the Commission which indicate a doubt in the minds of some members of the Bar as to the effect upon the right of election of a codicil executed on or after September 1, 1930, to a will theretofore executed. The Commission carefully considered that question, and intended that on and after that date no new will or codicil can be made without subjecting the testator's estate to the right of election granted by Section 18, D. E. L. It will be noted that the opening sentence of the new Section 18 reads as follows: ' Where a testator dies after August thirty-first, nineteen hundred and thirty, and leaves a will thereafter executed  *  *  *'; the word ' will ' in this sentence was intended to include a codicil under the statutory definition contained in Section 2, D. E. L., as enacted in 1909, which reads as follows:

"' § 2. Definitions. The term " will," as used in this chapter, shall include all codicils as well as wills.'

" No change was made in the language of that section by the recommendations of the Commission. The effect of the definition is simply to provide that the term ' will ' wherever used in the Decedent Estate Law shall embrace the term ' codicil,' so that

wherever the word 'will' is used it shall have the same effect as if it had been written 'a will or a codicil,' to avoid the necessity of repetition. The word 'codicil' is not used in the Decedent Estate Law, except in Section 2; the important Sections 15 and 21 do not refer specifically to a codicil, although dealing with the persons who may make wills and the manner of their execution. These sections, of course, cover codicils as well. The intent of the Commission was that the making of any testamentary instrument including a codicil (no matter how slight the change made by it), executed on or after September 1, 1930, shall subject the estate to the right of election of the surviving spouse."

The court may take into consideration the report of a commission created by the Legislature. (*People* v. *Schweinler Press*, 214 N. Y. 395; *United States* v. *St. Paul, M. & M. Ry. Co.*, 247 U. S. 310, 318.)

Section 20 of chapter 229 of the Laws of 1929 contains a recital of the intention of the Legislature in passing the new law, and, in reference to the *right of election*, expresses its intention to be: "To increase the share of a surviving spouse in the estate of a deceased spouse, either in a case of intestacy or by an election against the terms of the will of a deceased spouse thus enlarging property rights of such surviving spouse."

It further provided that such provision should be *liberally* construed to carry out such intention. Thus, it has been declared as the legislative purpose and policy to protect thenceforth, that is, after August 31, 1930, the surviving spouse and prevent disinheritance by the deceased.

This is expressive of an intention of the Legislature to consider any series of testamentary instruments as part of the completed will.

The history of the statute and its passage shows that the Legislature desired to preserve the distributive share of the surviving spouse. This purpose should not be thwarted. (*People ex rel. Durham R. Corp.* v. *LaFetra, supra; City of Albany* v. *Newhof,* 230 App. Div. 687, 692.)

The statute looks to the future and not to the past. The humane purpose was to remedy the law after August 31, 1930, for the benefit of the living spouse.

The court, in examining into the history of the enactment of new section 18, is within the proper bounds of using extraneous matter for the purpose of determining the meaning of the statute. (*Woollcott* v. *Shubert*, 217 N. Y. 212, 221; *Matter of Hamlin*, 226 id. 407, 414; *Travis* v. *American Cities Company*, 192 App. Div. 16.)

The new legislation is expressly declared to be remedial. It should be so construed and its provisions should be read as broadly as possible. (*Allen* v. *Stevens*, 161 N. Y. 122, 143; *Archer* v.

*Equitable Life Assurance Society*, 218 id. 18, 25; *American Historical Society* v. *Glenn*, 248 id. 445, 450, 451; *Woollcott* v. *Shubert, supra.*)

The underlying principle applicable to the construction of all statutes is to ascertain and follow the intent of the Legislature. In determining what the Legislature had in mind when it enacted the provision of the new Decedent Estate Law, it is right to take into consideration the occasion for the passage of the act and the mischief which it sought to correct. (*Cohen* v. *Neustadter*, 247 N. Y. 207; *O' Tier* v. *Sell*, 226 App. Div. 434, 437; *Gochee* v. *Wagner*, 232 id. 401.)

The right to make a testamentary disposition of property is not an inherent right, nor is it a right guaranteed by the fundamental law. Its exercise to any extent depends entirely upon the consent of the Legislature as expressed in its enactments. (*Matter of Bergdorf*, 206 N. Y. 309, 316.)

The right to make a will arose after, not before, the right to succeed through intestate succession. When the right to make a will was accorded, the law protected the widow and children against disinheritance. When the power to *testamentate* was used to divert the property from the widow and children the *preator* allowed a remedy known as " the plaint of an unduteous will." The Legislature, in preserving the share of the surviving spouse against a will is not innovating as much as it would seem at first impression. When the Legislature wrote back into our statutes in 1929 the absolute right of a widow to take her distributive share, even though a will were made, they were correcting existing abuses, but not overturning the common law.

It was the intention of the Commission and the Legislature that no new will or codicil, no matter how slight the change made in the existing will, might be made after August 31, 1930, without subjecting the testator's estate to the application of section 18.

It follows that a testator's expressed declaration that he does not intend that the will is to be republished is of no effect because it is repugnant to the law. The intention of the testator does not govern or control. (*Matter of Bertuch*, 225 App. Div. 773; *Matter of Cable*, 123 Misc. 894, 898; affd., 213 App. Div. 512; affd., 242 N. Y. 510.)

Much of this opinion will be recognized as *dicta*, but, as a member of the Commission which prepared the Decedent Estate Law, my views may be " helpful " in solving the legal problem.

It is my opinion that the codicil in the instant case brings the will up to the date of the execution of the codicil, and comes within section 18 of the Decedent Estate Law as in existence at the death of the testator.

Submit order.