In the Matter of the Estate of DAVID BROWN, Deceased.

Surrogate's Court, Westchester County, October 18, 1934.

*John J. Kirby,* for the executor.

*Kelley & Becker* [*Edward V. McKeown* of counsel], for Kathryn Brown, widow, objectant.

SLATER, S. The decedent died April 14, 1933, leaving a will dated April 9, 1928, and two codicils dated October 16, 1930, and March 31, 1931, respectively. He left a wife and two children. There was no provision made in the will or the codicils for either the wife or the children.

The executor is accounting for a gross estate consisting of personal property of $4,031.66, and a net estate amounting to $1,926.18.

At the time of his death the decedent and his wife were living apart, pursuant to a separation agreement.

The wife has filed objections to the account of proceedings and (1) claims the exemption of $300 under section 200 of the Surrogate's Court Act; (2) has filed notice of election to take her intestate share; (3) questions the reasonableness of the funeral bill.

The decedent and his wife married on January 22, 1890. Two children were born of the marriage, a son and a daughter. Both children are over twenty-one and are still living, one residing in the State of New Jersey and the other in the State of Ohio. The widow resides in Florida. After a marital existence of over twenty years, the decedent and his wife separated and an agreement of separation was executed February 2, 1910. The original agreement was offered in evidence. None of the circumstances surrounding the parties at the time of the contract was made are before the court. The record is barren of evidence which would throw any light on the intention of the parties. Presumptions in favor of either party to the contract cannot be indulged in. Facts upon which to rest such presumptions do not appear.

The separation agreement provides as follows:

*First.* It shall be lawful for the party of the second part (the wife) to live separate and apart from the party of the first part, free from his *marital control and authority* as if she were sole and unmarried, with the right to reside at such places and with such persons as she shall think fit, free from control, restraint and interference by the party of the first part as if she were sole and unmarried.

*Second.* Neither party shall compel the other to cohabit or dwell with him or her or to bring about the restitution of conjugal rights.

*Third.* During the *joint lives* of the parties the payment of twenty dollars per week to the wife.

*Fourth.* The property of the party of the second part (the wife), both real and personal, now held or which shall hereafter come to her, shall be and remain her sole and separate property with full power to sell and authorize the disposition of the same as if she were sole and unmarried.

*Fifth.* The party of the second part (the wife) agrees, as long as the husband shall perform the covenants and agreements herein, that she will not contract any debts against him and shall keep him free and harmless from any debts and liabilities contracted by her.

*Sixth.* In case the husband shall at any time be called upon to pay any debts, it shall be lawful for him to deduct the amounts thereof from the twenty dollars per week due the wife.

*Seventh.* The wife agrees not *to bring suit* against the husband, or compel him to pay for the maintenance of the daughter, or to apply to a court for any judgment or direction regarding her support and she grants, releases and quitclaims unto the said party of

the first part, his heirs and assigns, all her dower and right of dower in all real property of the husband then owned or which he should thereafter acquire, in the same manner as if the marriage had never been consummated.

*Eighth.* In case they become reconciled and cohabit, then this agreement becomes null and void.

*Ninth.* The agreements and covenants bind the heirs and personal representatives of both parties.

To summarize: By the agreement the *husband* releases marital control of the wife; agrees to the weekly payment for the support of the wife during their *joint* lives and agrees that the property of the wife shall be her sole property. The *wife* agrees not to contract debts against the husband; agrees not to claim pay for the maintenance of the infant daughter, and releases her right of dower in his real estate.

Several questions arise: (1) Does the separation agreement, by express words or by implication, operate as a bar to the widow's right to the exemption provided by section 200 of the Surrogate's Court Act and also serve as a bar to her right of election to take her intestate share in the decedent's estate? (2) At the time of the decedent's death was he a person " having a family " within the meaning of said section? (3) Is the widow interested in the estate to the extent that she may object to the reasonableness of the funeral bill?

The making of the codicils after September 1, 1930, made the prior will subject to the provisions of the new Decedent Estate Law. (*Matter of Simeone,* 141 Misc. 737; *Matter of Greenberg,* 261 N. Y. 474.) The question of abandonment cannot arise after the execution of the separation agreement. (*Powers* v. *Powers,* 33 App. Div. 126.) Such a contract is binding upon both parties unless set aside. (*Matter of Warren,* 207 App. Div. 793, 797; *Matter of Hughes,* 225 id. 29, 31; affd., 251 N. Y. 529.) A separation agreement should be given a strict rather than a broad construction in so far as it may tend to limit the rights of the wife. (*Matter of Wood,* 288 Mo. 588; 232 S. W. 671; 30 C. J. § 842, p. 1063.) Where the terms of the agreement are clear and only one reasonable interpretation can be given, that construction will be adopted and the words employed in the agreement will be given their ordinary meaning unless it appears from the expressed intent of the parties, or from their conduct or the circumstances, that a special meaning was intended. The courts should not go beyond the bounds of interpretation and into the realm of creation. (*Matter of Reed,* 247 Penn. St. 441; 93 Atl. 502; *Girard* v. *Girard,* 29 N. M. 189; 221 Pac. 801.)

It is to be assumed in the construction of a separation agreement that it contains all the parties intended it to and all that their minds had met upon.

I fail to find in the separation agreement words that serve as a release by the wife of her interest in the husband's estate, except her release of right of dower. Neither the husband nor the wife owned real property at any time. It is significant that the husband agreed that the property of the wife should be her sole and separate property, while there was no such agreement by the wife running in favor of the husband's property. There is nothing in the agreement which, in express terms or by reasonable implication, can be held to sustain the conclusion that it was intended for any other purpose than to afford written evidence of a determination of the parties to live apart; for the husband to provide for the wife's support during their *joint* lives; for her to remain away from him and for the relinquishment by her of dower in any real estate he might own. Not a word is expressed to show that these obligations were intended to affect her right by reason of her marriage in the event of his death. Inference or implication is not sufficient to effect the release of property rights. A construction of contracts of this character demands more definite terms than are found in this agreement to divest the wife of her right under the law. The agreement in *Jardine* v. *O'Hare* (66 Misc. 33) is similar to the one considered here.

There is a line of cases which hold that separation agreements may serve as a bar to property rights afforded by statute, but in all these cases the separation agreement expressly released the rights. (*Matter of Wylie*, 187 App. Div. 840; *Titus* v. *Bassi*, 182 id. 387; *Cain* v. *Cain*, 188 id. 780; *Matter of Hagen*, 119 Misc. 770; affd., 206 App. Div. 682; *Matter of Klein*, 121 Misc. 568; *Matter of Kiltz*, 125 id. 475; *Matter of Tierney*, 148 id. 378, 382, 386.)

In *Matter of Burridge* (261 N. Y. 225 [Feb. 1933]) the court was called upon to construe the effect of a separation agreement and the question there decided was whether the wife had voluntarily relinquished her right to claim the exemption. It was held that such was the effect of her contract. The separation agreement was made in 1917 in which the husband agreed to provide for the support of his wife during *his life* and the wife accepted that provision in lieu of any and all other claims for her support. In 1929, however, the parties entered into a *new separation agreement* by which the husband promised to pay the wife a larger sum each year, for her support, during *her life*. As the support continued for the wife for life and was made binding upon the husband's estate, it was held that the stipulated provision for the support of the wife took

the place of the provision to which, under the law of the State, the wife would otherwise be entitled. The court said that the contract contemplated and provided for that situation after the husband's death and should be construed accordingly. The facts in the *Burridge* case are not parallel to the facts in the instant case because in the agreement here the contract for support was for the *life of the husband*. Marital rights and obligations end with the life of either party to the marriage " but the State may still determine the division of their property after death." The court (at p. 228) wrote what appears to be *dicta* but which should, I believe, be accepted by this court as controlling upon the facts of the instant case: "An agreement of a wife that she shall accept in lieu of other provision for her support a sum fixed by the agreement, to be paid while *both parties live* and the husband's obligation to support continues, is fairly open to the construction that the wife still *intends to retain such rights against the husband's estate after his death as the law has conferred upon her*. The situation is different where provision for support of the wife, to continue *after* the husband's obligation to support is at an end and to be paid after the husband's death out of his estate, is accepted in lieu of all other claim or provision for support."

In the instant case, upon the husband's death, support is no longer a charge against his estate. The agreement is at an end. The marital rights and obligations are at an end. The law of the State steps in and provides for that support which the separation agreement had provided for until the husband's death.

I hold that the separation agreement does not act as a bar to the widow's right of exemption.

The next question is: Did the husband die " having a family " within the meaning of section 200 of the Surrogate's Court Act?

The courts have disregarded the years elapsing during the period of separation of the husband and wife and held that the husband dies " having a family " within the meaning of section 200 where there is no agreement to renounce any claim against the estate of the other. *Matter of Shedd* (60 Hun, 367; affd., 133 N. Y. 601) is the leading case. The rule in the *Shedd* case rests on the ground that the wife is *dependent* upon her spouse for support. (*Oberndorf v. Farmers' Loan & Trust Co.*, 71 Misc. 64; *Matter of Osborn*, 220 N. Y. 595; *Matter of Burridge, supra.*) *Matter of Shulenburg* (114 Misc. 155) was decided on the theory that the separation agreement was invalid and that the husband died " having a family," following *Matter of Shedd* (*supra*). (See *Matter of Landon*, 149 Misc. 832.)

The courts have in mind to make a distinction between a mere separation by agreement of the parties and a separation by judicial

decree. The first will not dissever the family within the meaning of the statute. The " marriage ceremony creates a family bond " and " in that sense husband and wife constitute a ' family ' so long as the marriage continues *in existence.*" (*Matter of Burridge, supra,* 227.) After a separation by decree or by agreement " the parties still bear to each other the relations of husband and wife," the only effect of the separation agreement being to modify their customary rights and duties in the manner and extent provided in the separation decree or agreement. (*Matter of Mosley,* 138 Misc. 847, 850.)

The facts of the instant case are dissimilar to those in *Matter of Barnes* (149 Misc. 149) and *Matter of Sitkin* (151 id. 448, 458), where the question turned on the abandonment by the husband of the wife and the court's very proper decision in each case excluded him from the exemption right.

*Matter of Young* v. *Hicks* (92 N. Y. 235) was a case where a provision made for the wife was to continue as a charge against the husband's estate after *his death.* Its effect was to deprive the widow from taking dower or any other interest given by the law. If the husband provides for the support of the wife *after* his death, it is binding upon his estate. It takes the place of the provisions of the law provided by the State for the wife's support; if the support arising under the separation agreement ceases at *his* death, then no charge can be made against his estate and the law steps in and gives the widow what is provided by the law, unless the separation agreement has released such right, *i. e.,* the right to receive exemptions, the right of quarantine and the right to take the intestate share. The test of whether a husband has a " family " cannot be measured by the yardstick of the years apart from each other nor by the distance of miles that they may live apart. The courts have given these words " having a family " in section 200 of the Surrogate's Court Act a liberal construction. The only way to make it non-effective is by the terms of a separation agreement or by abandonment.

I hold that the decedent died " having a family " within the meaning of section 200 of the Surrogate's Court Act.

With regard to the widow's right to take against the will: Section 18 of the Decedent Estate Law provides for the election by the surviving spouse to take against the will in the absence of testamentary provision. This progressive and humane act became effective September 1, 1930. It is a remedial provision designed to provide for the proper support of the wife after the death of the husband and should be liberally construed in favor of the surviving spouse. (*Matter of Harris,* 150 Misc. 758.) For interpretation of the law

and the legislative intent, see *Matter of Zweig* (145 Misc. 839); *Matter of Blowstein* (147 id. 870); *Matter of Benjamin* (150 id. 857); *Matter of Curley* (151 id. 664).

In *Matter of Stolz* (145 Misc. 799) the surviving husband had lived apart from the wife under the terms of a separation agreement by which he provided for her maintenance and support so long as *she* lived. Surrogate HENDERSON decided that the husband was not deprived of his right of election to take an intestate share against the provisions of the wife's will. Because of the separation agreement, such living apart did not constitute an abandonment. (*Matter of Burridge, supra.*)

I hold that the widow is entitled to her intestate right in the decedent's estate.

As an interested party, the widow has objected to the amount of the funeral bill. The funeral bill amounts to $1,189.40 and it has been paid. It contained the following items:

| | |
|---|---:|
| Undertaker's bill | $992 40 |
| Floral blanket | 75 00 |
| Two clergymen | 30 00 |
| Organist | 10 00 |
| Monument and marker | 66 00 |
| Care of grave, 1933 | 16 00 |
| | $1,189 40 |

It is said to be twenty-five to thirty per cent of the gross estate. An unreasonable funeral bill is a devastavit of the estate and the liability of the estate is expressly limited to reasonable funeral expenses. That is, they are reasonable only to the extent of a sum compatible to the circumstances of the decedent and the size of his estate. A demonstration of the circumstances of each individual decedent and the size of his estate is an essential prerequisite to any determination of the amount properly payable for funeral expenses from the assets of his estate. (*Matter of Matyasz*, 151 Misc. 370.) The funeral was arranged by the decedent's sister pursuant to a letter left by the decedent and offered in evidence. The will directs the sister to " take full charge of the arrangements for my funeral." The request in the letter was that provision be made for a casket similar to that which the decedent had arranged for a friend a short time before his death. An item of $160 of the $992.40 was for a concrete vault because the burial plot was wet. There was no charge made for the burial plot. The body was interred in burial ground owned by the sisters.

Where persons have rights cast upon them by the law as against the will, a decedent cannot improperly divert the property in an unreasonable manner by directing that excessive sums of money be expended for an expensive plot of burial ground and extraordinary funeral expenses, all leading to the depletion of his estate in which others have rights as creditors or as distributees. The power of disposition is limited. (*Matter of Curley*, 151 Misc. 664.) It is my opinion, however, that in this case the money expended for general funeral expenses, in view of the size of the estate, the other *pertinent considerations* to be given to it and the circumstances of the case, as disclosed by the facts, cannot be said to be, and I do not so find it, unreasonable in amount.

Submit decree for distribution in accordance herewith.