In the Matter of the Estate of WILHELMINA SCHMIDT, Deceased.*

LOUISA NEUBAUER, as Administratrix with the Will Annexed, etc., of ADOLPH SCHMIDT, Deceased, Petitioner, Appellant; JOHN J. MCINERNEY, as Executor, etc., of WILHELMINA SCHMIDT, Deceased, Respondent.

Fourth Department, April 3, 1936.

*Affg. 157 Misc. 502.

*Charles B. Bechtold,* for the appellant.

*John J. McInerney,* executor-respondent, in person.

CROSBY, J. The testatrix, Wilhelmina Schmidt, and Adolph Schmidt were married and lived together as man and wife for a little over one year. Then Mrs. Schmidt abandoned her husband and afterward entered into a bigamous marriage with one Kallusch. After the separation Mr. and Mrs. Schmidt never saw each other again although they both lived for over twenty years after their separation. About ten years after the separation Mr. Schmidt obtained from Mrs. Schmidt a release of her interest in all his property, as well as a surrender of all interest in any estate he might leave at his death. For this release Mr. Schmidt paid his wife $500. Mr. Schmidt never gave his wife any release of his interest in her estate, and he never contributed anything to her support after she abandoned him. Mrs. Schmidt predeceased her husband by a few weeks. The administratrix with the will annexed of Mr. Schmidt began this proceeding to compel the executor of Mrs. Schmidt's will to set aside the exemptions mentioned in section 200 of the Surrogate's Court Act for the benefit of the estate of Mr. Schmidt. From a decree dismissing the petition this appeal is taken.

The decree should be affirmed. Section 200 of the Surrogate's Court Act provides that " If a person having a family die, leaving a widow or husband, or minor child or children the following articles shall not be deemed assets, but must be included and stated in the inventory of the estate as property set off to such widow, husband or minor child or children."

Then follows a list of articles, and money and property usually spoken of as exemptions.

It is perfectly apparent why these so-called exemptions are provided for. Formerly they comprised a few bare necessities of family existence — the cow, the ten sheep, the candlestick, the loom and spinning wheel, the family Bible, etc., and were calculated to preserve the family, bereft of father or mother, even at the expense of depriving creditors of their just dues. These exemptions

have been increased of late, and the list has been modernized to meet new conditions. Today the exemptions take a substantial part of any small estate. But the theory upon which they are allowed has never changed. The language of the statute itself discloses the theory. They are for the benefit of the family. Just as a home is more than a house, so a family is more than a marriage. We are aware of cases holding that a man and wife constitute a family though they do not live together. Such a case is *Matter of Burridge* (261 N. Y. 225). But in that case, even though the husband and wife did not live together, provision for the wife's support was made by the husband. And, in the opinion in that case, it was said: " In the light of the history of the statute there can be no doubt that the exemptions were intended, primarily, to provide for the comfort and support of the family when the owner of the property, which has been used for family support and comfort, dies."

And again: " It is not enough that the decedent leaves a widow or husband or minor child or children. There must be a bond, however loose, which creates a collective ' family.' "

How can there be said to be a family where a husband and wife have not even seen each other for over twenty years, where there are no minor children, where the wife is living in adulterous relation with another man, and where her abandonment of him is fully acquiesced in by him, and where he has bought from her a release of her interest in his property and has not contributed a penny to her support for two decades? If such conditions make a family then the word " family " has lost its ancient and honorable meaning and becomes merely an excuse for taking property that may be needed to pay creditors.

The decree should be affirmed, with costs.

All concur, except TAYLOR and THOMPSON, JJ., who dissent in an opinion by THOMPSON, J., and vote for reversal and for remitting the matter to the Surrogate's Court. Present — SEARS, P. J., TAYLOR, THOMPSON, CROSBY and LEWIS, JJ.

THOMPSON, J. (dissenting). Adolph Schmidt and Wilhelmina, his wife, lived together in a house owned by the husband for some two years, when the wife abandoned her husband, who continued to dwell in the homestead until his death — over twenty years. Shortly after leaving her husband she effected a bigamous marriage and lived and cohabited with the person she so married until the time of her death. After the parties had been separated some ten years, and while the wife was cohabiting with her bigamous spouse, she signed an agreement, in which claimant's decedent was described as her husband, and by which she released to him all her right, title

and interest of any kind or nature " which I now have as his wife, or may hereafter have as his widow in and to any of his real or personal property, or to his estate." The contract contained no covenants on the part of the husband, nor did he execute it. The marriage was never dissolved, nor was there ever any decree granted, or agreement made, by which the status of the parties to it was changed or affected in any respect.

Section 200 of the Surrogate's Court Act provides:

" § 200. Exemption for benefit of family. If a person having a family die, leaving a widow or husband, or minor child or children the following articles shall not be deemed assets but must be included and stated in the inventory of the estate as property set off to such widow, husband or minor child or children."

To entitle a surviving husband to these exemptions his deceased wife must have left a family. It is not enough that she should merely have left a surviving husband or minor child or children. There must be a bond, however loose, which creates a collective " family." (*Matter of Burridge*, 261 N. Y. 225, 227.) However, " doubtless the marriage ceremony creates a family bond which can be severed *only by judicial decree*. In that sense husband and wife constitute a ' family ' so long as the marriage continues in existence." (*Matter of Burridge, supra*, p. 227; *Matter of Brown*, 153 Misc. 282.)

*Matter of Burridge* (*supra*) dealt with the claim to exemption under section 200 of the Surrogate's Court Act, of the administrator of a widow who had entered into two valid written separation agreements with her husband. The claim of the administrator was unsuccessful but in the course of the opinion Judge LEHMAN clearly stated the law applicable generally to such claims. Among other things, the court said (at pp. 227, 228): " The law affixes to the marriage contract rights and obligations, both of property and person, and, in general, these rights and obligations constitute the foundation of the family. The parties may by agreement determine the manner in which the obligations of marriage shall be performed, but they cannot destroy the obligations which the law has affixed to the marriage contract. Even where husband and wife have lived apart for ten years without the husband contributing to the support of the wife, we have held that the family bond is not severed, and the wife is entitled to claim the statutory exemption from her husband's estate. (*Matter of Shedd*, 60 Hun, 367, 368; affd. on opinion below, 133 N. Y. 601.) Even where the husband has formally agreed to live apart from his wife, at her death he may claim the same exemption. (*Matter of Osborn*, 220 N. Y. 595.) * * * The courts of this State have uniformly held that husband and wife constitute a family so long as the marital rights and obligations

continue, regardless of agreement, express or implied, between the parties as to the manner in which those obligations shall be performed."

It cannot be said that the husband acquiesced in the wife's living apart from him by paying her a sum of money to forestall all financial demands upon him during her life and her widowhood, thus requiring her to rely upon her adulterous consort or her own efforts for sustenance. But even if he did thus acquiesce, the husband did not thereby destroy the marriage relationship existing in law or relinquish any rights given him by section 200 of the Surrogate's Court Act. For the marriage relation was never " severed by judicial decree " and no valid separation agreement was entered into — even if it could be held that such an agreement would destroy the " family " and deprive the husband of the benefits of section 200. Nor can it be said that the husband abandoned his wife so that she might have successfully prosecuted an action against him for separation from his bed and board. She left the family home of her own accord, he remained in it until he died. Of course, in the ordinarily accepted understanding of the term, family life as between Adolph Schmidt and his wife was severed. There was no shared home and fireside after she left him. But within the contemplation of this statute, so far as the rights and status of Adolph Schmidt were concerned, he remained of his wife's " family." To hold otherwise is to say that a recreant and lecherous spouse, simply through her own wicked and selfish acts, may deprive the estate of an innocent and law-abiding but perhaps too amiable marital mate of the right given the estate by law.

In the circumstances the husband became entitled to the exemptions in question upon the death of the wife; upon his death his estate became vested with the ownership thereof and entitled to a decree requiring the executor of the deceased wife's estate to set off the exempt property to the administrator with the will annexed of the decedent husband in the inventory. (*Matter of Burridge*, 261 N. Y. 225.) (See, also, *Matter of Osborn*, unreported decision of the Surrogate's Court of Monroe county; affd., 175 App. Div. 966; 220 N. Y. 595; *Matter of Gluer*, 155 Misc. 41; *Matter of Sachs*, Id. 233; *Matter of Zolessi*, 154 id. 313.) The learned surrogate has held otherwise. In this we think he was in error.

The decree should be reversed, with costs, and the matter remitted to the Surrogate's Court with directions that a decree be granted in accordance with this opinion.

TAYLOR, J., concurs.

Decree affirmed, with costs.