In the Matter of the Estate of LAURA F. SCHMIDT, Deceased.

Surrogate's Court, Otsego County, April 25, 1936.

*Arthur W. Morse,* special guardian for Mildred Schmidt and Myrtle White.

*Morse & Wallace,* for the petitioner.

*Mosher & Mosher,* for the administratrix.

CAMPBELL, S. Laura F. Schmidt died intestate in the town of Burlington, September 30, 1935. She left no husband, but did leave six children, two of whom — Mildred Schmidt, the petitioner, and Myrtle White, twin sisters — became twenty-one years of age on the 17th day of April, 1936. Catherine S. Schmidt, one of the daughters, was appointed administratrix November 18, 1935. She has since married and her name now is Catherine S. Sherman. Since about the month of June, 1934, Catherine S. Sherman resided with her mother. At the time of the mother's death the family

consisted of the mother, Catherine S. Sherman and her husband, and a son, Gerald Schmidt.

The petitioner had been employed as a nurse maid and domestic at Norwich, Laurens and New Berlin for five years prior to her mother's death and for three and one-half years prior to her mother's death she had been employed by Dr. Hammond at New Berlin, a distance of approximately two miles from where her mother lived when she first went to Dr. Hammond's and about five miles from where the deceased lived at the time of her death. During all the time that she worked away from home petitioner contributed more or less to her mother's support in cash and also by making payments on bills which her mother owed. It appears from the testimony that she visited her mother regularly on her half-days off and on Sundays and that her washing was done at her mother's home. She sometimes stayed Saturday night and over Sunday at her mother's.

Myrtle White, petitioner's twin sister, was married in June, 1934, and since her marriage has resided with her husband and been supported by him. It appears from the testimony that Mildred's mother visited her at Dr. Hammond's residence on several different occasions and once stayed all night with Mildred.

At the time of her death decedent lived on a rented farm in Burlington, the lease to which expired December 31, 1935. There was no inventory of the estate. On December 7, 1935, the administratrix had an auction sale of substantially all of the household goods and personal property on the farm. It was stipulated between the parties that Exhibit A is a list of all of the property that was sold at such auction and that the prices indicated are the prices for which the property was sold and that the prices received upon such sale were the value thereof. All of the household goods were sold at the auction, with the exception of a victrola and a radio, each of the value of ten dollars. All of the cattle mentioned in Exhibit A were subject to the lien of chattel mortgages of substantial amount. In addition to property listed, there was also a Dodge automobile which was reclaimed by a finance company which had a lien thereon and the estate received nothing from the automobile. Funeral expenses in the amount of $187 were paid from a portion of the avails of a life insurance policy in the Metropolitan Life Insurance Company, upon which Mildred had paid part of the premiums, and the balance received from such policy was equally divided between Mildred and her older sister, Catherine, who had also paid part of the premiums.

Concededly, at the time of her death decedent had no husband. She was survived by six children, two of whom — Catherine and

Gerald, both of full age — lived with decedent at home on a rented farm. Catherine's husband, Mr. Sherman, was also residing on the farm, so that these three persons, with decedent, were living together as one family, under one roof, when decedent died, and Catherine had been there since Myrtle's marriage in June, 1934.

The attorney for the administratrix quotes Webster's definition of a family as follows: "A body of persons who live in one house, and under one head or manager; a household, including parents, children, and servants, and, as the case may be, lodgers or boarders."

This is the same definition, in substance, as the one quoted from the Century Dictionary in *Matter of Shedd* (60 Hun, 367), except the Century Dictionary adds the following as a second definition: " Parents with their children, whether they dwell together or not; in a more general sense, any group of persons closely related by blood, as parents, children, uncles, aunts, and cousins; often used in a restricted sense only of a group of parents and children founded upon the principle of monogamy."

The conditions in the case at bar come under either subdivision of this Century Dictionary definition and also under the one quoted in respondent's brief.

In the *Shedd Case* (*supra*), which was affirmed (133 N. Y. 601), a man had lived alone, apart from his wife, for ten years. Upon his death exempt property was set off to his widow. This adjudication amounted to a holding that the relationship constituted a controlling element of the legal definition of family under this section. There are numerous similar holdings, unnecessary to cite. *Matter of Burridge* (261 N. Y. 225) does not conflict with the *Shedd* case. In the *Burridge* case the widow, in her lifetime, had released all claim to exemptions by a valid contract founded upon a sufficient consideration. This contract, held to be valid, was the controlling factor of the case. The decision cites *Matter of Shedd* and other similar decisions and distinguishes between them and the one then before the court.

I decide that the minor children in this case are entitled to exemptions as follows:

Substantially all the property in the estate having been sold at public auction, and the parties having stipulated in the minutes that Exhibit A contained a list of all such property so sold, with the prices received, and that the prices so received represented the accurate value of the property, the sums received from the sale of the following articles are set off to such minor children:

Under subdivision 1 of section 200 of the Surrogate's Court Act:

| | |
|---|---|
| Household goods | $16 95 |

Under subdivision 3:

| | |
|---|---|
| Ten hens | 7 00 |
| Buzzsaw | 17 00 |
| Canthook | 10 |
| Part of Ford car | 1 00 |
| Log-bob | 5 00 |
| Harrow | 7 50 |
| Hiller | 1 50 |
| Sidehill plow | 5 00 |
| Cultivator | 3 00 |
| Hayrack and sideracks | 1 50 |
| Six-tine fork | 65 |
| Two shovels | 50 |
| Two forks | 30 |
| Neckyoke | 90 |
| Gray horse | 107 00 |
| Black mare | 27 00 |
| Black horse | 10 00 |
| Necessary food for the animals so set off for the period of sixty days after decedent's death to be deducted from the item of sixteen and one-half tons of hay sold at five dollars a ton | 10 00 |
| Total | $204 95 |

Under subdivision 4:

The avails of the sale of the following articles are also set off:

| | |
|---|---|
| Milk check received October 25, 1935, apparently for milk produced on the farm during the month of September and prior to the death of decedent | $53 73 |
| Heavy double harness | 2 75 |
| Six milk cans | 12 30 |
| Milk pail | 25 |
| Quantity of straw | 5 00 |
| Sixteen and one-half tons of hay, less two tons of hay set off for food for domestic animals | 72 50 |
| Thirty-six tons of hay | 153 00 |
| Total | $299 53 |

Substantially the only property not sold at the auction, as appears from the testimony, was a radio and a victrola, each of the value of ten .dollars, and these two items are set off to the minor children under subdivision 1.

The cows on the farm were all incumbered by chattel mortgages and the ownership of the decedent therein was an equity and equities are not the subject of set-off under the provisions of section 200.

It is also apparent that the milk check received November twenty-fifth, in the amount of $146.46, and the milk check received December 25, 1935, amounting to the sum of $75.61, are not property owned by decedent at the time of her death, but both are avails of the produce of the farm after the death and are not subject to set-off.

There was an apparent attempt to show waiver on the part of the minors. The evidence on that point was stoutly denied, and the claimed waiver was by infants whose executory contract would not, under such circumstances, be enforcible.

Submit decree in accordance with above.