In the Matter of the Estate of AUGUSTINO CAROLEO, Deceased.

Surrogate's Court, Westchester County, May 27, 1940.

*Shon & Chackes* [*Samuel H. Crohn* of counsel], for Santo Costanzo, as administrator, etc.

*Bernard J. Zincke,* for the Yonkers General Hospital.

*Louis D. Posner,* for the Personal Finance Company of New York.

*Bryan & Curran,* for Don S. Tripoli, creditor.

*Salvatore Cerone,* for Fortunato Diagostino, creditor.

MILLARD, S. This decedent died intestate leaving, as his only distributee, a minor daughter twenty years of age, married and living with her husband, this administrator. The estate, which is insolvent, consists of the proceeds of a life insurance policy amounting to $681.75. The claims against the estate, as proved and allowed, aggregate $341.34, and the funeral expenses have been fixed at the sum of $300.

The administrator has made an application to open the accounting proceeding and for leave to file an amended account " showing that the sum of $300.00 has been set off to one Antoinette Castanzo, a minor child of said decedent," presumably for the purpose of offsetting said amount against the surcharge imposed by my decision of February 9, 1940. At the time the accounting proceeding was instituted the daughter was upwards of twenty-one years of age. In support of such application the administrator alleged that up to the time of decedent's death he and his wife lived with decedent in the home of the latter at Yonkers, N. Y., " and that the said decedent was the main support of his family." This statement is inconsistent with the stipulation of counsel for the

administrator allowing a claim for board and room furnished decedent during the last two months of his life. Due consideration being given to all circumstances, it will be assumed, for the purposes of this decision, that the daughter was not living with her father immediately prior to his death.

The application, therefore, presents the question as to whether the daughter is entitled to the $300 exemption provided for in subdivision 4 of section 200 of the Surrogate's Court Act. This section, originally enacted in 1829, now reads in part as follows:

" § 200. Exemption for benefit of family. If a person having a family die, leaving a widow or husband, or minor child or children the following articles shall not be deemed assets but must be included and stated in the inventory of the estate as property set off to such widow, husband or minor child or children: * * *

" 4. Money or other personal property not exceeding in value three hundred dollars except, however, that the administrator or other representative of the estate may, where there are insufficient assets in the estate to pay the reasonable funeral expenses of the decedent, apply any such money or other personal property in the estate to pay any deficiency in the payment thereof."■

The primary purpose of this legislation was to set aside and put beyond the reach of creditors certain assets that would enable the family to maintain the household for a limited period following death. (*Matter of Burridge*, 261 N. Y. 225.) In opposition to the daughter's claim it is urged that the benefits of the section are limited to those cases where, at the time of death, there existed a collective family and that the applicant must show that she was an actual member of the household. It has been held that the existence of actual family ties is not necessarily an essential prerequisite to the application of the statute. (*Matter of Osborn*, 175 App. Div. 966; affd., 220 N. Y. 595.) There are numerous cases pertaining to the rights of estranged spouses to claim exemption and it has been uniformly held that mere separation of a surviving spouse is no bar to his or her rights. (*Matter of Shedd*, 60 Hun, 367; affd., 133 N. Y. 601; *Matter of Osborn, supra; Matter of Mackenzie*, 158 Misc. 543.) There is another line of cases, however, holding that, under some circumstances, a surviving spouse will be deemed to have relinquished his or her rights. (*Matter of Burridge, supra; Matter of Schmidt*, 247 App. Div. 505; affd., 271 N. Y. 651.) In deciding that a separation agreement providing for payments for the duration of the life of the wife deprived her of rights of exemption under the statute, the Court of Appeals in *Matter of Burridge* (*supra*), distinguished

*Matter of Shedd (supra)* and *Matter of Osborn (supra)* on the grounds that, in both cases, there was no agreement between the parties as to the manner in which the husband should carry out his lawful obligation to support his wife and no agreement, by either party, to renounce any claim against the estate of the other. In *Matter of Schmidt (supra)* the Appellate Division, affirmed without opinion by the Court of Appeals, bases its decision on a finding that even though the legal marital status remained intact, the conduct and relationship of the parties was such that no family existed within the meaning of the statute. I refer to these decisions merely to show that the rights conferred by the statute are not absolute; that in each case the court must be satisfied that a " family " exists and in the case of a husband predeceasing his wife, that some legal obligation to support can be found. " It is not enough that the decedent leaves a widow or husband or minor child or children. There must be a bond, however loose, which creates a collective ' family.' " *(Matter of Burridge, supra.)*

Can it be said that this decedent died " having a family? " No case in point has been brought to my attention, and independent research has failed to disclose any in this State. The Supreme Court of Georgia, however, in *Goss* v. *Harris* (117 Ga. 345; 43 S. E. 734) had occasion to pass upon the same state of facts under a statute similar to ours, section 3465 of the Georgia Civil Code (Ga. Code Anno. tit. 31, § 113–1002), the pertinent provisions of which read as follows: " Among the necessary expenses of administration, and to be preferred before all other debts, * * * is the provision for the support of the family, to be ascertained as follows: Upon the death of any person testate or intestate, leaving an estate solvent or insolvent, and leaving a widow, or a widow and minor child or children, or minor child or children only, it shall be the duty of the ordinary, on the application of the widow, or the guardian of the child or children, or any other person in their behalf, on notice to the representative of the estate (if there be one, and if none, without notice), to appoint five discreet appraisers; and it shall be the duty of such appraisers, or a majority of them, to set apart and assign to such widow and children, or children only, either in property or money, a sufficiency from the estate for their support and maintenance for the space of twelve months from the date of administration, in case there be administration on the estate, to be estimated according to the circumstances and standing of the family previous to the death of the testator or intestate, and keeping in view also the solvency of the estate. * * *." In holding that a minor daughter married at the time of her father's death was not entitled

to the benefits of the statute the court said: " But without extending the argument further, we think it was intended to provide a support for the widow and those of the children whom the father was under a legal duty to support while he lived. When a girl marries and leaves her father's home, the family relation ceases for many purposes. She sets up a new family of her own. She no longer has any legal right to look to her father for support and maintenance. He is no longer bound to pay any debts she may incur for necessaries. As to all these matters the husband has taken the place of the father, and, if the father is relieved of these obligations while he lives, there would seem to be no good reason why a burden of this kind should fall upon his estate after his death, and thus lessen the income of others who are really dependent upon his estate for a support, and to whom he was, while in life, bound both legally and morally to furnish a support."

The following excerpts from leading cases will best illustrate the interpretation given to the statute under consideration and a statute of the State of Georgia having a similar purpose. In *Matter of Burridge (supra)*, Judge LEHMAN of our Court of Appeals said: " In the light of the history of the statute there can be no doubt that the exemptions were intended, primarily, to provide for the comfort and support of the family when the owner of the property, which has been used for family support and comfort, dies. (*Wilcox* v. *Hawley*, 31 N. Y. 648; *Becker* v. *Becker*, 47 Barb. 497.) However broad the definition we may give to the word family as used in the statute, yet by the terms of the statute itself, the exemption is granted where a person ' having a family ' dies." In *Blassingame* v. *Rose* (34 Ga. 418, 421) Justice LUMPKIN of the Georgia Supreme Court said: " What is the object of the law setting apart a year's support for the widow and minor children of the deceased? The law explains itself. It is to prevent a family from being turned away houseless — a widow and children — and cast upon the world in their forlorn condition."

Although the wording and benefits of the two statutes are dissimilar in some respects, the primary objects and purpose of the legislation are the same. Considering the circumstances of this case and having in mind the objects of the statute, I hold that this decedent did not die " having a family " within the meaning of the statute, that he was under no legal obligation to support his married minor daughter and consequently no rights to exemption under section 200 accrue to her.

The application to open the accounting proceeding and to file an amended account is denied.

Settle decree accordingly.